THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHARLES DAVIS, Defendant-Appellant.

First District (1st Division)  No. 84—0299

Opinion filed March 29, 1985.

Cheryl Berdell and Steven Clark, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Mary Ellen Dienes, and Daniel R. Carter, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAMPBELL delivered the opinion of the court:

Following a bench trial, the defendant was convicted of theft (Ill. Rev. Stat. 1983, ch. 38, par. 16—1(a)(1)), and he was sentenced to a term of five years. He appeals, contending that the evidence was not sufficient to convict him of a felony theft because of failure to establish the fair cash market value of the stolen property, and that his conviction should be reversed because it was based solely on the implausible and inconsistent testimony of one witness who participated in the offense.

Defendant was charged with the residential burglary and theft at the Oakton Street, Evanston, home of Suhail and Elizabeth Miari. Mr. and Mrs. Miari testified that they each left their home between 4 and 4:30 p.m. on June 29, 1983, at which time their home was in order and secure. They returned at approximately 10:30 p.m. and observed that the lights were on, the screen was off the open kitchen window and the dining room doors were open. Major items that were missing included a small and a large television set, a stereo, a camera, binoculars and two boxes of jewelry. They recovered the small television, one box of jewelry, a camera cover case and a quilted bedspread. They testified further that they received an insurance settlement check for the items not recovered in the sum of "around $1500."

Susan Johnson, who lived in the vicinity of the burglarized premises, testified that around 10:30 p.m. on the above date she heard a car stop across the street from her home. She looked out the window and saw one man standing by the trunk of a beige and brown older model Pontiac Grand Prix. Another man, who made three trips "back and forth across the street from the alley to the car," was carrying large objects which he put in the car trunk. She called the police and accompanied them to the alley, where she saw a bed sheet and a quilt in some bushes.

Lenny Sudduth testified he was driving the car Mrs. Johnson saw in the area of the burglary when he stopped as defendant, whom he knew, whistled to him. Defendant asked for help because his "woman" had ejected him from their residence, and his property was out in the rain. When Sudduth refused, defendant offered to give him a black and white television. Sudduth then agreed, and defendant directed him to drive to Oakton and South Boulevard, where he parked. Sudduth turned off his headlights, but left the parking lights on. Defendant got out, crossed the street to the alley and disappeared for a few seconds. When he returned carrying a 19-inch television, Sudduth opened the car trunk and defendant placed the television inside. Defendant then went back to the alley, leaving Sudduth at the car. He reappeared car-

rying a stereo and a small radio which he also placed in the trunk. On the third trip from the alley, defendant brought a small black and white television and a camera. Defendant then directed him to a basement apartment on the north side of Chicago, where he helped defendant take all of the property except the black and white television. The property was left with a man and woman, and defendant told them he would pick the items up later. Sudduth then drove defendant to an elevated station because defendant said he had to go to work. Defendant told him he appreciated what had been done for him and told him to use the small television. Sudduth then went home.

On July 4, 1983, police officer Wilbur came to his house and questioned him as to whether he had let anyone use his car. Sudduth replied he had not, but when the officer asked if anyone had used it on the night of the burglary, Sudduth told him in detail about helping the defendant. Sudduth then gave the officer the television set, and on the following day he went to the police station, where he identified the defendant from photographs.

Police officer Chris Wilbur testified he investigated the case. When he went to talk to Sudduth he had considered him to be a suspect, but after talking with him, he did not think Sudduth was involved in the crime.

Based on the evidence, the trial court found defendant guilty of theft.

Defendant first contends the State's evidence failed to establish that the fair cash market value of the stolen property was in excess of $300, and therefore he asserts that he could only be convicted of misdemeanor theft.

■■■ The particular value of the property taken in a theft determines only whether the crime will be punished as a felony or misdemeanor. (*People v. Jackson* (1984), 99 Ill. 2d 476, 459 N.E.2d 1362.) The standard for determining the value of property at the time and place of the theft is the property's fair cash market value. (*People v. Cobetto* (1977), 66 Ill. 2d 488, 363 N.E.2d 854.) Evidence presented may be sufficient, however, to support a conviction for the felony amount, though the testimony of witnesses was not addressed precisely to the "fair cash market value." *People v. Harden* (1969), 42 Ill. 2d 301, 47 N.E.2d 404.

We note that the statute related to theft parallels the statute defining criminal damage to property wherein only one offense is defined, but the amount of damage determines whether the offense shall be punished as a felony or misdemeanor. (See *People v. Grass* (1984), 126 Ill. App. 3d 540, 543, 467 N.E.2d 383, 395.) In relation to the latter

offense, it has been held that cost of repairs is an accurate indication of the damages suffered and is therefore a proper method by which to determine the damage for which a defendant is criminally responsible. (*People v. Carraro* (1979), 77 Ill. 2d 75, 80, 394 N.E.2d 1194, 1196.) While the State need not prove the exact amount of damages in a criminal damage to property case, it does have to prove the minimum amount necessary to justify a felony conviction. *People v. Carraro* (1979), 77 Ill. 2d 75, 394 N.E.2d 1194; *People v. Holder* (1983), 119 Ill. App. 3d 366, 373, 456 N.E.2d 628, 633.

■ Similarly, we find that the State need not prove the exact dollar value of the property taken in a theft, but need only establish that the fair cash market value of the property at the time of the theft exceeds the sum of $300 in order to sustain a conviction of a felony theft. In *United States v. Ricketson* (7th Cir. 1974), 498 F.2d 367, *cert. denied* (1974), 419 U.S. 965, 42 L. Ed. 2d 180, 95 S. Ct. 227, the trial court admitted into evidence the deposition of a theft victim who had stated under oath that the stolen jewelry was worth $200,000, and that the value was set by her insurer. The defendant argued that such expression of opinion was inadmissible hearsay. The United States Court of Appeals for the Seventh Circuit stated:

> "***[H]er testimony was not based on any idle expression of opinion by an insurance agent. Rather, it was based on an actual transaction: the amount the insurer paid for her jewelry. [Citation.] Of course, the transaction was not between a willing buyer and a willing seller, so that it might be argued that the insurer's conduct in paying for the jewelry is offered as evidence of its belief as to market value and is therefore an implied hearsay assertion. The trend of modern rules and decisions is to admit assertive conduct as outside the hearsay rule. [Citation.] We agree with this trend and hold that an insurance loss payment is admissible to prove market value of stolen goods." 498 F.2d 367, 373.

■ In the instant case, the complainant, Mrs. Miari, testified to the value of the property stolen from her home as follows:

> "[Assistant State's Attorney]: All right. Did you, since that date, have a settlement with an insurance company or have items replaced?
>
> A. Yes, we do.
>
> Q. Was that to the tune of over three hundred dollars?
>
> MR. ROY: Objection.
>
> MR. KLAPMAN: I want to know if it was over three hundred dollars.

MR. ROY: All right.
THE COURT: Is there an objection?
MR. ROY: No.
MR. KLAPMAN: Was this over three hundred dollars?
THE WITNESS: Yes, it was.
Q. In fact, did you receive a check?
A. Yes.
Q. How much was the check for?
MR. ROY: Objection.
THE COURT: She may answer.
THE WITNESS: For around fifteen hundred dollars."

We find that the above testimony is admissible evidence of the insurer's belief as to the market value of the property taken in the theft, and that it is sufficient to establish that the value of the stolen property is in excess of $300. We therefore hold that the defendant was properly convicted of felony theft.

Defendant next contends that his conviction should be reversed because it was based solely on the implausible and inconsistent testimony of an accomplice in the crime. He points out that Sudduth at first denied that his car had been in the vicinity of the crime while talking with Officer Wilbur, but admitted helping a man he knew to move some property when he became aware that his car had been seen on "a rainy night" in that area; that it was then Sudduth gave the officer the television; that Sudduth admitted he turned off his headlights upon parking his car and watched beside the trunk while his friend, who had been evicted by "his woman," made several trips carrying only electrical equipment and a camera which he testified were then taken to the friend's "woman"; and that Sudduth gave conflicting statements as to whether his "friend" had facial hair.

A court of review may not substitute its judgment for that of the trier of fact as to questions involving the weight of the evidence or the credibility of the witnesses. (*People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313.) The credibility of the witnesses, the weight to be given their testimony, and the inferences to be drawn from the evidence are matters to be determined by the trier of fact. (*People v. Akis* (1976), 63 Ill. 2d 296, 347 N.E.2d 733.) Discrepancies or inconsistencies in testimony affect only the weight to be given the testimony. (*People v. Beasley* (1977), 54 Ill. App. 3d 109, 369 N.E.2d 260.) The testimony of an accomplice, even uncorroborated, is sufficient to sustain a conviction if it satisfies the trier of fact beyond a reasonable doubt. *People v. Nathaniel* (1981), 103 Ill. App. 3d 610, 614, 431 N.E.2d 1080.

Here, the trial court specifically stated that it plainly and une-

quivocally believed Lenny Sudduth, and noted that Sudduth and Mrs. Johnson both stated that he stood by the trunk of the car while the other man came and went. The court also noted that Sudduth is not "your usual accomplice," that he was never charged and that he was not given immunity. The evidence that Sudduth stopped to help someone who turned out to be a criminal offender was a matter for determination by the trial court. Further, the testimony of a single witness is sufficient to convict where the witness is credible and he viewed the offender under such circumstances as would permit a positive identification to be made. (*People v. Yarbrough* (1977), 67 Ill. 2d 222, 267 N.E.2d 666.) The testimony of an identification witness will be strengthened to the extent of his prior acquaintance with the accused. (*People v. Lumpkin* (1975), 28 Ill. App. 3d 710, 329 N.E.2d 262.) We do not find that the evidentiary determination of the trial court is so unreasonable, improbable or unsatisfactory as to raise a reasonable doubt as to defendant's guilt.

■ The judgment of the circuit court of Cook County is therefore affirmed. Pursuant to *People v. Nicholls* (1978), 71 Ill. 2d 166, 374 N.E.2d 194, we grant the State's request that defendant be assessed $50 as costs for the State's defending this appeal, and incorporate it as part of our judgment.

Judgment affirmed.

BUCKLEY and O'CONNOR, JJ., concur.