THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CALVIN LIGHTHALL, Defendant-Appellant.

Second District No. 2—87—0194

Opinion filed October 21, 1988.

WOODWARD, J., dissenting.

G. Joseph Weller and Kathleen J. Hamill, both of State Appellate Defender's Office, of Elgin, for appellant.

Dennis Schumacher, State's Attorney, of Oregon, and Richard L. Salon, of Chicago (William L. Browers and Martin P. Moltz, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE INGLIS delivered the opinion of the court:

Defendant, Calvin Lighthall, was charged by an indictment with felony theft by deception. (Ill. Rev. Stat. 1985, ch. 38, par. 16—1(b)(1).) A jury found defendant guilty as charged, and the trial court sentenced him to serve an eight-year extended term of imprisonment. Defendant appeals, challenging the sufficiency of the evidence to sustain his conviction and the propriety of his extended-term sentence. We affirm.

The indictment charging defendant with felony theft by deception specifically alleged that between October 26, 1984, and May 5, 1985, he knowingly obtained by deception control over $11,954.80 belonging to the complainant, John W. Kennay, with the intent to deprive Kennay permanently of its use and benefit "in that he presented himself to John W. Kennay as an accountant or bookkeeper offering to keep the business records of the business operated by John W. Kennay and agreeing to pay bills and coordinate the finances of the business of John W. Kennay."

A jury trial was held on October 6 and 7, 1986. Kennay testified that in 1984, he was both a farmer and the owner of Duke's Health Club in Rochelle, Illinois. Sometime between August and October 1984, defendant came to the health club and offered to provide ac-

counting services for the business. According to Kennay, defendant said that he was an accountant who went to various businesses and did their books on their premises. Kennay accepted the offer, and defendant began performing accounting services for him on or about October 1, 1984. It was agreed that defendant would keep records of all taxes owed by Kennay, balance his checkbook, and file tax returns at the end of the year.

After defendant had taken over as accountant, Kennay authorized Julie Johnson, the health club's manager, to draw checks on the health club account for the purposes of paying certain social security and unemployment taxes as well as State and Federal income taxes that were owed for the 1984 tax year on both Kennay's business and farm. Johnson wrote 11 checks on the health club account for the payment of these taxes. In addition, Kennay drew one check on his personal account, the memo portion of which identifies it as payment for 1982 Federal taxes. The checks totaled $11,954.80. Each of the checks was made out to defendant and included his professional fees as well as the tax liability. All were delivered to defendant by Johnson.

At some point in early 1985, Kennay received a notice from the Internal Revenue Service indicating that he was not making his quarterly tax payments. Kennay confronted defendant about the notice of overdue payments, and defendant stated that the taxing bodies apparently had failed to credit Kennay's account. Defendant said that he would take care of the problem.

Defendant worked for Kennay until May 1985, at which time defendant told Kennay that he "could not continue doing the books anymore." After May 1985, Kennay did not authorize any more checks to defendant. In February 1986, Kennay received a final notice from the Internal Revenue Service for delinquent Federal taxes from the period beginning in July 1984, and ending June 30, 1985. Kennay hired a certified public accountant, Tom Winebaugh, to refigure the taxes owed from spring 1984 until the closing of the health club in 1985. Winebaugh reported to Kennay that his Federal and State income taxes, Federal and State unemployment taxes, and social security taxes were overdue. Kennay subsequently paid unspecified amounts on the delinquent taxes.

Kennay's testimony was corroborated by Johnson and Winebaugh. In addition, defendant's grand jury testimony was read to the trial jurors. Before the grand jury, defendant testified that when he was first hired, Kennay was a quarterly payment or two behind on the Social Security tax. Although this fact was disputed at trial, defendant told

the grand jury that it was Kennay's idea that the checks be written out to defendant. At the time he was handling Kennay's accounts, defendant was also handling the accounts of National Building Services (National), a Rockford maintenance company. National was having financial problems, and between 1980 or 1981 and 1985, defendant periodically loaned National money from his personal account. Defendant believed there was nothing abnormal or out of the ordinary about loaning a client money. According to defendant, this relationship with National "disrupted" his checking account, and as a result, defendant began using National's checking account as if it were his own for purposes of his accounting business. Accordingly, Kennay's checks were deposited in National's account, from which defendant stated that he intended to issue checks to pay Kennay's taxes. Defendant testified that before the checks were issued, National went bankrupt and the court attached its checking account, thereby encumbering the money given by Kennay to defendant. Defendant stated that he obtained money with which to pay Kennay's taxes from another client to whom he had previously loaned $25,000; however, he subsequently deposited that money into National's account, and it was also encumbered.

Defendant did not testify or present any additional evidence at trial. On the basis of the foregoing, the jury found defendant guilty. Defendant, who had been previously convicted of felony theft in Winnebago County in 1985, was tentatively sentenced to serve an extended term of eight years' imprisonment for the instant offense. The court ordered the parties to ascertain whether an extended term could be given under the circumstances at bar. After a hearing on that issue, the court subsequently determined that an extended term was authorized and reiterated its prior sentencing order. Defendant brought this timely appeal.

■■ ■ Before reaching the merits of defendant's appeal, it is necessary to address two preliminary matters. First, we note that after all of the briefs in this case were filed and the oral argument was heard, defendant *pro se* filed a document challenging the effectiveness of his appellate counsel for failure to raise a speedy trial issue. Defendant's counsel accordingly filed a motion to withdraw and for appointment of substitute counsel. We initially note that there is no obligation of appointed counsel to brief every conceivable issue on appeal, and it is not incompetence for counsel to refrain from raising those issues which, in his or her judgment, are without merit, unless the appraisal of the merits is patently wrong. (*People v. Barnard* (1984), 104 Ill. 2d 218, 230.) In any event, defendant does not have a

right to representation both *pro se* and by counsel. (*People v. Page* (1987), 152 Ill. App. 3d 957, 959; *People v. Guthrie* (1978), 60 Ill. App. 3d 293, 297.) Accordingly, on the court's motion, defendant's *pro se* pleading is stricken from the record. Defendant's counsel's subsequent motion to withdraw as counsel on appeal and to appoint substitute appellate counsel is denied.

■■ ■ We further note that defendant did not file a motion for a new trial following the jury's verdict. Generally, the failure to make such a motion results in waiver of the issues sought to be raised on appeal. (*People v. Marron* (1986), 145 Ill. App. 3d 975, 977.) Exceptions to the waiver rule have been recognized where the defendant seeks review of constitutional issues which have properly been raised at trial and which can be raised later in a post-conviction proceeding, where the challenge attacks the sufficiency of the evidence, or where there is plain error. (*People v. Enoch* (1988), 122 Ill. 2d 176, 190; *Marron,* 145 Ill. App. 3d at 977.) The first issue raised by defendant in the instant action challenges the sufficiency of the evidence to sustain his conviction and is therefore reviewable notwithstanding defendant's failure to raise that issue in a post-trial motion. (See *Enoch,* 122 Ill. 2d at 190; *Marron,* 145 Ill. App. 3d at 977.) We also elect to review the second issue raised by defendant challenging the propriety of his extended-term sentence under the doctrine of plain error pursuant to Supreme Court Rule 615(a) (107 Ill. 2d R. 615(a)). See *People v. Baker* (1983), 114 Ill. App. 3d 803, 809.

Defendant first contends that the jury verdict was not supported by the State's evidence. Defendant argues that the evidence fails to prove that defendant's ultimate failure to deliver the payments to Federal and State taxing agencies was due to his *specific intent* to defraud Kennay, that Kennay was deceived by him, or that defendant took money from Kennay with the intent to permanently deprive him of its use and benefit. We disagree.

■■ ■ The indictment charges defendant with theft by deception pursuant to section 16—1(b)(1) of the Criminal Code of 1961 (Criminal Code) (Ill. Rev. Stat. 1985, ch. 38, par. 16—1(b)(1)). That section provides that a person commits theft when he knowingly obtains by deception control over the property of the owner with the intent to permanently deprive the owner of its use and benefit. (Ill. Rev. Stat. 1985, ch. 38, par. 16—1(b)(1).) In order to sustain a conviction for theft by deception, as is charged here, the State is required to prove beyond a reasonable doubt that (1) the owner of the money which is the subject of the charge was induced to part with it; (2) the transfer of the money was based on deception; and (3) the recipient intended

to permanently deprive the original owner of the money. (*People v. Jensen* (1982), 103 Ill. App. 3d 451, 454.) In addition, the State must prove that the defendant acted with the specific intent to defraud the victim. (See *People v. Rolston* (1983), 113 Ill. App. 3d 727, 731.) Whether the specific intent to defraud exists is a question of fact and does not have to be proved by direct evidence. (113 Ill. App. 3d at 731; *People v. Ballard* (1978), 65 Ill. App. 3d 831, 836.) Since direct evidence of specific intent to defraud is so rarely available, circumstantial evidence may be sufficient to sustain a conviction. (*Rolston*, 113 Ill. App. 3d at 731.) Thus, intent to defraud may be inferred from the facts and circumstances surrounding the transaction. (*People v. Varellas* (1985), 138 Ill. App. 3d 820, 826.) Questions of fact regarding specific intent to defraud and inferences to be made from the evidence are for the jury's determination. (*Ballard*, 65 Ill. App. 3d at 836.) The jury's determination is entitled to great weight, and a defendant's conviction will not be set aside unless the evidence is so unsatisfactory that it raises a reasonable doubt of the defendant's guilt. See *Rolston*, 113 Ill. App. 3d at 731.

Defendant relies substantially on *Rolston* in support of his contention that the State failed to prove that he intended to defraud and intended to permanently deprive Kennay of his property. The defendant in *Rolston* operated a replacement window business. (*Rolston*, 113 Ill. App. 3d at 730.) The defendant took orders from customers seeking replacement windows and obtained down payments from those customers for their orders, but failed to order their windows from the factory or install the windows in their homes. (113 Ill. App. 3d at 728.) The defendant stated that he used the money he received from his customers to pay immediate business and living expenses, hoping to cover the cost of early orders with receipts of subsequent orders. (113 Ill. App. 3d at 730.) According to the defendant, the orders for windows did not arrive as fast as he expected them to come in, and, when confronted by the customers regarding the delays, defendant lied and told them that their orders had been placed. (113 Ill. App. 3d at 729-30.) The defendant was convicted of four counts of theft by deception, and the appellate court reversed. (113 Ill. App. 3d at 733.) The court stated that a defendant's failure to perform a contract and his use of customers' funds for personal expenses are not proof of felonious intent. (113 Ill. App. 3d at 732.) While the court acknowledged that the defendant's failure to order the windows and false statements to customers were "damaging," it found these facts overcome by the remaining evidence in the case, namely, that the defendant received professional training from a reputable manufacturer for whom

he was an authorized dealer; partially performed one of the contracts and fully performed another; put substantial money into the business; did not try to avoid his customers; has not denied owing his customers money; and has continued in the business despite the prosecution. 113 Ill. App. 3d at 732-33.

While *Rolston* and the instant action may share some factual similarities, we believe that the circumstances in *Rolston* and reasoning applied by the court in reversing that defendant's conviction are sufficiently distinguishable from the case at bar. Here, defendant represented himself as an accountant and solicited Kennay as a client. Defendant told Kennay that the money he received from checks drawn on the health club account would be used to pay Kennay's various tax obligations. Defendant received 11 checks drawn on the health club account and one check drawn on Kennay's personal account for the purposes of paying those tax obligations. However, rather than using those checks for the purposes for which they were intended and for which Kennay thought they were being used, defendant deposited that money in the account of another client. Defendant did not pay Kennay's tax obligations when they became due. After Kennay began to receive delinquent tax notices, defendant lied to Kennay and represented that the notices were sent as a result of a bureaucratic foul-up. Defendant did not tell Kennay that the money had been deposited in another client's account, that the money had become inaccessible because of that client's bankruptcy, or that his own checking account had become disrupted. Defendant not only failed to tell Kennay that the taxes had not been paid but affirmatively told him that the taxes *had been paid*. This is not, as defendant suggests, a case like *Rolston* where the defendant was unable to fulfill a contract because he spent a down payment. Here, defendant repeatedly led his client deeper into debt by not paying his taxes on 12 successive occasions and lied to his client to cover his tracks. Unlike *Rolston*, there is no evidence in the instant action that defendant performed or intended to perform any of the services promised to Kennay in a legitimate manner. In addition, defendant terminated his relationship with Kennay without acknowledging that the services for which he was hired had not been provided.

The *Rolston* court noted that it is ordinary business practice to use money received as a down payment. (113 Ill. App. 3d at 732.) However, it is not ordinary business practice for an accountant to solicit the business of filing tax returns and to take a client's money on numerous occasions to pay those taxes, but instead deposit the money into the account of a failing business. The defendant portrayed to the

jury by the evidence in the instant action was not a clumsy business-man failing to fulfill his orders, but rather a shrewd accountant taking money from a client to forward his own designs. The jury had a sound foundation for finding each of the three elements required by *Jensen* and the specific intent required by *Rolston.* Defendant's specific intent can be ascertained from the continuous and repeated acts of taking money from one person and wrongfully giving it to another. It was quite logical for the jury to infer from the evidence that defendant repeatedly took money from Kennay for a purpose other than paying Kennay's taxes. One purpose supported by the evidence would be in keeping National's business going as long as possible.

 █ A reviewing court will not set aside a jury's verdict unless the evidence is so improbable or unreasonable or so palpably contrary to the verdict as to create a reasonable doubt as to the defendant's guilt. (*People v. Brajcki* (1986), 150 Ill. App. 3d 506, 513; see also *Rolston,* 113 Ill. App. 3d at 731.) Any discrepancies or conflicts in the testimony affect only the weight to be accorded the testimony, and the determination of the credibility of the witnesses, the weight to be accorded their testimony, and the inferences to be drawn therefrom are matters entirely within the province of the trier of fact. (*People v. Davis* (1985), 132 Ill. App. 3d 199, 204.) A reviewing court will not substitute its judgment for that of the jury on questions regarding credibility and the weight of the evidence. (*Davis,* 132 Ill. App. 3d at 204.) Here, after hearing the testimony of the State's witnesses and the other evidence introduced at trial, the jury concluded that defendant took money from Kennay on the pretense that it would be used to pay Kennay's taxes, did not use it for that purpose, and never intended to use it for that purpose. We believe the record supports a finding of guilt beyond a reasonable doubt.

Defendant next contends that the trial court erred in imposing an eight-year extended term of imprisonment where the facts of the case and defendant's background do not support such a sentence. We disagree.

██ Defendant correctly observes that he qualifies for an extended-term sentence having been convicted for theft under similar facts in October 1985. (See Ill. Rev. Stat. 1985, ch. 38, pars. 1005—5—3.2(b)(1), 1005—8—2(a).) Imposition of an extended-term sentence is discretionary with the trial court. (*People v. Anderson* (1985), 142 Ill. App. 3d 240, 243.) It is well established that the trial court is in a superior position to weigh the relevant factors in imposing an appropriate sentence for criminal conduct. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154.) A trial court's judgment will not be altered on re-

view absent an abuse of discretion (68 Ill. 2d at 154), and, where the sentence is within the legislatively prescribed limits, it will be reduced only if found to be at great variance with the purpose or spirit of the law. *People v. Treadway* (1985), 138 Ill. App. 3d 899, 904; *People v. Lloyd* (1981), 92 Ill. App. 3d 990, 997.

In the case. at bar, the trial judge made findings in aggravation and mitigation but rejected leniency after weighing the mitigating factors against the nature of the offense and defendant's prior conviction for theft under similar facts. The court found defendant's conduct in the instant action particularly aggravating in that it took place while he was awaiting trial in Winnebago County for the prior theft. We find the sentence imposed was proper under these circumstances.

The judgment of the circuit court is affirmed.

Affirmed.

NASH, J., concurs.

JUSTICE WOODWARD, dissenting:
I respectfully dissent from the majority's opinion because the State failed to prove its case beyond a reasonable doubt.

The defendant was convicted of the offense of theft by deception as provided by section 16—1(b)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 16—1(b)(1)), which provides:
> "A person commits theft when he knowingly:
> ***
> (b) Obtains by deception control over property of the owner; [and]
> * * *
> (1) Intends to deprive the owner permanently of the use or benefit of the property ***."

Deception is defined in section 15—4(e) of the Criminal Code as follows (Ill. Rev. Stat. 1985, ch. 38, par. 15—4(e)):
> "As used in this Part C, 'deception' means knowingly to:
> * * *
> (e) Promise performance which the offender does not intend to perform or knows will not be performed. Failure to perform standing alone is not evidence that the offender did not intend to perform."

As stated in the majority opinion, three elements must be proved to sustain the charge of theft by deception, namely, (1) the owner of

the money which is the subject of the charge be induced to part with it; (2) that deception be the *sine qua non* for the transfer of the money; and (3) the recipient intends to permanently deprive the owner of the money. *People v. Jensen* (1982), 103 Ill. App. 3d 451, 454.

Accordingly, the State was required to prove that the defendant promised to pay Kennay's taxes; that he did not intend to pay said taxes at the time he agreed to perform Kennay's accounting service; and that the defendant knew at the various times he accepted Kennay's checks that he could not pay said taxes. The defendant deposited 12 checks from Kennay between October 26, 1984, and May 3, 1985. There is no evidence that the defendant, before and at the time he deposited the checks from Kennay, intended to appropriate the funds represented by said checks. The defendant deposited the checks in the bank account of another client, namely, National Building Service, because his personal bank account was "tied up" by reason of checks he had received which were not paid, and, therefore, his bank account was not available to write checks that would be necessary in order to pay Kennay's taxes. Subsequently, that bank account was frozen by reason of the bankruptcy of National Building Service. At the time the defendant received the checks from Kennay and at the time he deposited them in the National Building Service account, he did not know that National Building Service was going to be thrown into bankruptcy, and there is no evidence to the contrary. The evidence does show that the defendant was endeavoring to assist National Building Service with its financial problems; in doing so, the defendant put a mortgage on his personal residence and also secured a $25,000 loan from another client; these funds were also deposited in the National Building Service account and were frozen by the bankruptcy.

The cases involving theft by deception state that surrounding circumstances are of great importance in determining whether in a specific case there was deception. The surrounding circumstances in this case make it clear that the funds were unavailable for the purpose for which the defendant took possession thereof due to the unforeseeable bankruptcy of National Building Service. It is not reasonable to conclude that the defendant would have deposited the funds in the National Building Service account if he had known or had any basis for knowing that the funds would become unavailable by reason of bankruptcy. The bankruptcy of National Building Service is a fact unrebutted by the State. It occurred subsequent to the time defendant received the last check from Kennay on May 3, 1985.

There is no question that defendant failed to perform his agreement to pay Kennay's taxes; however, the facts fall squarely within that portion of the definition of deception heretofore set forth which states, "[f]ailure to perform standing alone is not evidence that the offender did not intend to perform." (Ill. Rev. Stat. 1985, ch. 38, par. 15—4(e).) The foregoing facts and the reasonable inferences therefrom demonstrate that the State failed to prove that the defendant did not intend to perform his agreement with Kennay or that he intended to permanently deprive Kennay of his money at the various times the checks were deposited and therefore must be accepted.

The majority opinion cites *People v. Ballard* (1978), 65 Ill. App. 3d 831, 836, for the proposition that specific intent to defraud is a question of fact, and it may be determined by the jury from the surrounding circumstances. In that case the facts were stated by the court as follows:

> "[I]n the case before us the evidence clearly showed that defendants here did not even attempt to honor their promises to their investors; there was sufficient evidence to infer that the failure of defendants' enterprise came not from over-enthusiasm or business 'naivete,' but that *the promises made were never intended to be fulfilled.* Therefore, we hold that there was sufficient evidence to find the defendants guilty beyond a reasonable doubt." (Emphasis added.) (65 Ill. 2d at 836.)

In this case, the defendant had every intention of using the National Building Service account to pay Kennay's taxes; however, he was subsequently frustrated from doing that by the bankruptcy. The majority opinion endeavors to distinguish this case from *People v. Rolston* (1983), 113 Ill. App. 3d 727. In this case and in *Rolston*, the money was secured by the respective defendants to be used to pay certain obligations that the respective defendants would incur in carrying out the promises made to the respective victims. In both of these cases, the defendant lied to the victim; in this case, the defendant stated that the notice of tax delinquency was due to bureaucratic foul-up and that the taxes had been paid. In *Rolston*, the defendant lied and told his customers that the windows had been ordered or that they would be delivered soon. In the *Rolston* case, the victim's money had been deposited into the defendant's own bank account and had been spent for his *own* expenses. Here, Kennay's money was not deposited in the defendant's bank account but was placed in a client's bank account because the defendant's account had been "tied up." The defendant told Kennay that his taxes had been paid, while in *Rolston*, "the defendant was unable to fulfill a contract because he spent the down

payment." The majority states that the defendant led Kennay deeper into debt and lied to cover his tracks; however, the false statements of both defendants here and in *Rolston* were very similar; in fact, the defendant in *Rolston* used the same tactics on *several* customers.

Further, the majority states that the defendant never acknowledged to Kennay that he could not perform; however, in his testimony before the grand jury, he stated as follows:

"Q. Okay. Anything further?

A. Whether you find me guilty or not, I want to make one statement. I don't care what anyone says, I never received a dime of any money whatsoever and I never did. And whether you find me guilty or not, I intend that I will pay Mr. Kennay back, because I know Mr. Jerry Fleming will not pay Mr. Kennay back. I will pay Mr. Kennay back, may God be witness to my soul that I will do so, sir." (Jerry Fleming was the principal in National Building Service.)

The majority asserts that the defendant took Kennay's money on a pretense that it would be used to pay his taxes and that defendant never intended to use it for that purpose. Further, the majority states that the defendant deposited Kennay's money in the account of a "failing business." (175 Ill. App. 3d at 707.) These two inferences are not supported by the evidence. As previously stated, the defendant also deposited money he borrowed on his own home, as well as Kennay's money, into the National Building Service account, and at that time, the defendant did not know that this account would subsequently be tied up by bankruptcy. Certainly, had he known that this would occur, he would not have deposited into that account money he borrowed on his own home.

Under the foregoing facts, the inference does not follow that defendant was a "shrewd" accountant, taking money from a client to forward his own designs. (175 Ill. App. 3d at 708.) Defendant was a 51-year-old trained accountant who had been in business for approximately 25 years, and the record indicates that he enjoyed reasonable success; he acknowledged his debt to Kennay as previously stated; however, he was not able to continue his business due to conviction in another case which is not part of the record here.

As previously stated, the State has the burden of proving beyond a reasonable doubt that the defendant had the intent to defraud Kennay at the various times he received the 12 checks. It is stated in *Rolston* as follows:

"A defendant's failure to fulfill a contract is not proof of a specific intent to defraud. *** Even if the funds are used for the

proprietor's personal expenses, that action is no proof of felonious intent; after all, there is no substantial difference between cashing the check directly or depositing the check first and drawing a legitimate salary through the use of those funds later. *** Again, a failure to refund money to dissatisfied customers is not necessarily proof of a specific intent to defraud. [Citation.]" *Rolston*, 113 Ill. App. 3d at 732.

The *Rolston* case held that the defendant's failure to perform alone did not establish a lack of intent to perform, and the court found the fact that the defendant *spent* the down payments did not give rise to an inference of criminal intent even though he could not later place the promised orders with the window suppliers. Subsequently, Rolston explained that he had to order 100 windows at a time due to the lack of funds, and he was unable to perform as promised. Applying the *Rolston* case reasoning here, it is likewise clear that the defendant did not spend Kennay's money for his own benefit, and it is uncontradicted that defendant was unable to withdraw the monies from the National Building Service account because of bankruptcy. The majority opinion concedes that the defendant's explanation as to the unavailability of Kennay's funds was uncontradicted by the State's case. Furthermore, there was no evidence of collusion between the defendant and National Building Service, and there was no evidence of any circumstances known to the defendant prior to the bankruptcy which would have made his stated plan to pay Kennay's tax bills from the National Building Service account unlikely or impossible to fulfill. This type of evidence was the *sine qua non* to proving defendant was guilty of deception.

The State failed to produce any evidence that rebutted critical elements of defendant's testimony before the grand jury. (Because that testimony was read to the jury, and defendant did not testify at trial, the jury was in no better position than this court in determining the defendant's credibility.) Rather than presenting the relevant records which could conceivably have undercut defendant's testimony regarding the loss of the money due to National Building Service's bankruptcy, the State chose not to produce any such evidence, despite defendant's assertions that he put the tax money in another client's account and that, thereafter, the money became tied up in bankruptcy proceedings. Further, the State failed to rebut defendant's grand jury testimony that *Kennay* had proposed that the checks be written out to the defendant. The State did not come forward with sufficient evidence to prove that defendant took complainant's checks by deception, and it failed to prove beyond a reasonable doubt that defendant

acted to deprive complainant permanently of the use or benefit of his money.

The defendant was convicted of theft in another case which was pending during the time frame of defendant's trial in this case; however, there was no evidence in the record here prior to the jury verdict in this case which in any way furnished evidence against the defendant; therefore, that case and defendant's subsequent conviction cannot properly be considered as evidence against the defendant here.

This court has a duty to reverse a conviction based upon a record which fails to establish defendant's guilt beyond a reasonable doubt. (*Rolston*, 113 Ill. App. 3d at 733.) Under the evidence and surrounding circumstances of this case, the defendant's conviction should be reversed.