**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Loren E. LEVINE, Defendant–Appellant.**

No. 92–1323.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 21, 1992.

Decided Jan. 7, 1993.

Barry R. Elden, Asst. U.S. Atty., Crim. Receiving, Appellate Div., Eddie A. Stephens (argued), Office of the U.S. Atty., Chicago, IL, for plaintiff-appellee.

Daniel J. Stohr (argued), Chicago, IL, for defendant-appellant.

Before CUMMINGS, Circuit Judge, PELL, Senior Circuit Judge, and KAUFMAN, Senior District Judge.[1]

1. Judge Frank A. Kaufman of the District of     Maryland sat by designation on this appeal.

PELL, Senior Circuit Judge.

The district court revoked Loren Levine's probation after finding that Levine had committed theft by deception under Illinois law. Levine appeals the court's decision, challenging the sufficiency of the evidence.

## I. BACKGROUND

In 1983, in district court, Levine was convicted of six counts of mail and wire fraud and was sentenced to two consecutive terms of four-years' imprisonment. *United States v. Levine,* 794 F.2d 1203, 1204 n. 1 (7th Cir.1986). The court later reduced this sentence to time served plus five-years' probation, conditioned on Levine's payment of $720,000 in restitution and on his promise to obey state laws. During Levine's term of probation, a Dr. Krystyna Berry complained to the Chicago Police Department that Levine had cheated her out of $25,000. Both the Police Department and the Cook County State's Attorney's Office reviewed Berry's allegations and concluded that the prosecution should not go forward. Berry's allegations, however, formed the basis of the probation revocation proceeding in the district court.

Instead of presenting testimony at the revocation hearing, the parties stipulated to the facts contained in a eight-page FBI report and a four-page "statement" from Dr. Berry. According to both the report and the statement, Berry made contact with Levine, a representative of Diversified Mortgage Company, to arrange a $15,000 loan. During their first conversation in December of 1990, Levine talked extensively about himself and his business experience. He claimed that he was a wealthy, successful businessman who made millions of dollars annually. In reality, Levine had few personal assets and still owed substantial restitution payments. Levine never discussed the restitution payments or his fraud conviction.

During later conversations with Berry, Levine urged her to take out a larger loan. When Berry expressed concern about borrowing the money, Levine claimed that the interest rate on such a loan would be a "wash" because the interest would be tax deductible. He also informed Berry that she could reinvest the funds from a loan into lucrative ventures, including one investment that would yield $1,700 per month in interest in exchange for a loan of $25,000. Levine explained that a client needed the $25,000 to close a much larger transaction. Because the bank would not lend the client any additional money, the client, who expected to make a fortune on the project, was willing to pay a high rate of interest on the loan.

Following several conversations with Levine, Berry decided to borrow $375,000. When Levine delivered the $375,000 loan to Berry, he requested a check for $25,000. Instead of documenting the $25,000 loan in a formal contract, Levine wrote a handwritten "agreement" on a piece of Diversified Mortgage company stationery. Although Levine promised to replace the agreement with a formal contract the next day, Berry never received a contract.

After Levine received the money, he deposited it in his father's account and used it for his own personal expenses. Levine never paid Berry any interest. When Berry reminded Levine about the interest payments, he replied that all of his assets were deposited in his mother's bank account, which was tied up in probate court. He promised to pay the money as soon as he received the commission from a large mortgage.

Berry later learned that Levine's mother's estate was not in probate. She attempted to question Levine about this information, but he refused to return her telephone calls. Berry then called Levine's father, threatening to "cause trouble" unless Levine called her. After that conversation, Levine returned Berry's call, but refused to talk about the loan. A few days later, Levine arranged a meeting with Berry in his office. When Berry again demanded her money back, Levine replied the he would pay her $2,000 within a couple of days. Levine never performed on this promise.

Levine then arranged a second meeting with Berry, which he failed to attend. After Levine missed the meeting, Berry called Levine's father and left a message. The next day, Levine's father informed Berry that Levine had left an envelope for her. In the envelope was a money order for $750. Levine paid the balance of the $25,-000 on October 17, 1991, the day before his probation revocation hearing.

After reviewing these facts, the district court determined that Levine had committed theft by deception under Illinois law and revoked Levine's probation. Levine appeals, challenging the sufficiency of the government's evidence.

## II. ANALYSIS

The district court properly revoked Levine's probation. The government's evidence, which addressed all five elements of theft by deception, enabled the court to "reasonably satisfy" itself that Levine had violated state law.

### A. *The Standard of Review*

■ A district court may revoke probation if " 'reasonably satisfied' that the conduct of the probationer has not been as good as required by the conditions of probation." *United States v. Thomas,* 934 F.2d 840, 846 (7th Cir.1991) (quotations and citations omitted). This standard applies to all violations of probation, including violations based on state law offenses. In such cases, the court need not find proof of the defendant's guilt beyond a reasonable doubt, or as Levine suggests, be reasonably satisfied that the defendant could have been convicted beyond a reasonable doubt. *See United States v. Smith,* 571 F.2d 370, 372 (7th Cir.1978); *United States v. Granderson,* 969 F.2d 980, 983 (11th Cir.1992). The district court need only be reasonably satisfied that the defendant violated the law. *Smith,* 571 F.2d at 372. We

will not reverse the court's decision absent an abuse of discretion. *United States v. Rife,* 835 F.2d 154, 155 (7th Cir.1987).

■ This standard of review is considerably lower than the standard applied in Illinois criminal cases. The Illinois cases ask whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt, rather than whether a lower court could have been "reasonably satisfied" that a violation occurred.[2] *Compare id.* at 373 *with State v. McManus,* 197 Ill.App.3d 1085, 144 Ill.Dec. 272, 280, 555 N.E.2d 391, 399, *appeal denied,* 133 Ill.2d 566, 149 Ill.Dec. 331, 561 N.E.2d 701 (1990). Because of these differing standards of review, the Illinois cases cited by the parties must serve primarily as statements of the law. Their factual conclusions are only exemplary, not binding. *Smith,* 571 F.2d at 373.

### B. *Theft By Deception*

Theft by deception is defined as "obtain[ing] by deception control over property of the owner." Ill.Rev.Stat. ch. 38, para. 16–1(a)(2). The crime involves five elements: (1) deceptive statements,[3] (2) specific intent to defraud, (3) intent to permanently deprive a victim of her property, (4) an actual transfer of property, and (5) a causal link between the deception and the transfer. *McManus,* 144 Ill.Dec. at 280, 555 N.E.2d at 399. While Levine admits that the government met its burden on the fourth element of the crime, he challenges its evidence on the other four elements. Any of these remaining elements may be proven by circumstantial evidence. *People v. Rolston,* 113 Ill.App.3d 727, 70 Ill.Dec. 87, 89, 448 N.E.2d 965, 967 (1983).

#### 1. Levine made deceptive statements.

■ Illinois law defines five types of conduct as deception. This conduct in-

---

2. This court recognized the distinction between the two standards of review in *Smith,* where we held that a defendant's probation could be revoked even after acquittal on state law charges. *Smith,* 571 F.2d at 373.

3. Although courts generally do not include this first element when listing the elements of theft by deception, both the statute and the case law require "false" or "deceptive" statements. Ill. Rev.Stat. ch. 38, para. 16–1(b); *People v. Jensen,* 103 Ill.App.3d 451, 59 Ill.Dec. 219, 221, 431 N.E.2d 720, 722 (1982).

cludes (a) creating or confirming a false impression and (b) failing to correct a previously-created false impression. Ill.Rev. Stat. ch. 38, para. 15–4(a) & (b). Under this definition, Levine deceived Berry about his qualifications and about the disposition of her money.

Levine earned Berry's trust by lying about his personal achievements. He claimed that he had grossed over $20 million dollars a year while working for his father's jewelry company. Levine further maintained that he worked at Diversified only because he loved his job. In reality, Levine was deeply in debt. He had limited assets and still owed hundreds of thousands of dollars in restitution.

Levine also deceived Berry about his plans for her money. Although Levine claimed that Berry was lending money to an investor who wanted to purchase a high-yield investment, Levine actually placed the money in his father's bank account. While the evidence does not reveal whether Levine created the investor, or whether the investor existed but later dropped out of the deal, this is irrelevant. If the investor never existed, Levine created a false impression by inventing him. If the investor existed but later reneged, Levine failed to correct his previously-created impression. Either action amounts to deception.

2. Levine acted with specific intent to defraud.

Levine also denies any intent to deceive Berry. He claims that the transfer of money was a legitimate business deal and characterizes himself as a defaulting debtor. As a defaulting debtor, Levine could not be guilty of theft. *People v. Buffalo Confectionery Co.*, 78 Ill.2d 447, 36 Ill.Dec. 705, 712, 401 N.E.2d 546, 553 (1980).

As proof that he is a debtor, Levine cites *Rolston*, 70 Ill.Dec. at 90, 448 N.E.2d at 968. Rolston, who owned a legitimate home-repair business, entered into contracts to sell windows. Rolston collected down-payments from his customers, but never ordered the windows. In fact, he deposited the checks into his checking account and withdrew the money for business expenses. Although these facts provided circumstantial evidence of Rolston's intent to defraud, Rolston gave legitimate business-related reasons for his actions. These business-related reasons enabled the court to characterize Rolston as a defaulting debtor, instead of a defrauder.

Illinois courts refuse to apply a similar characterization to defendants without business reasons for their actions. *See People v. Lighthall*, 175 Ill.App.3d 700, 125 Ill.Dec. 163, 168, 530 N.E.2d 81, 86 (1988), *appeal denied*, 124 Ill.2d 559, 129 Ill.Dec. 153, 535 N.E.2d 918 (1989). In *Lighthall*, for example, the defendant provided accounting services to the victim. Pursuant to their arrangement, the defendant collected checks to pay the victim's tax liabilities. Instead of paying these taxes, the defendant deposited the checks into another client's account. Although the defendant claimed that these transfers were loans to his client, the court affirmed the defendant's conviction, finding no evidence that he "intended to perform any of the services promised … in a legitimate manner." Noting that it is not ordinary business practice for an accountant to deposit tax money into the account of another business, the court rejected the defendant's characterization that he was, like Rolston, a "clumsy businessman failing to fulfill his orders."

Levine's case is similar to *Lighthall*. As in *Lighthall*, the government presented strong circumstantial evidence of intent. *See People v. Morrissey*, 133 Ill.App.3d 1069, 89 Ill.Dec. 232, 234, 479 N.E.2d 1238, 1240 (1985) (specific intent to deceive may be inferred from circumstantial evidence). The government showed that Levine deceived Berry about an investor who needed money to close a big deal. After inducing Berry to loan money to the investor, Levine deposited the money into his father's account, where it could not be easily traced. Levine then systematically avoided Berry by refusing to return telephone calls, lying about the location of the money, and refusing to refund the loan. Levine, like the defendant in *Lighthall*, never refuted this evidence with a legitimate business-related

explanation. Absent such an explanation, we will infer an intent to defraud.

### 3. Levine intended to deprive Berry permanently.

The third element of theft by deception is met when a defendant intends to prevent an owner from recovering her property. Ill.Rev.Stat. ch. 38, para. 15–3. Because the defendant may form the intent to deprive at any time, he may possess the requisite intent even if he eventually returns the property. *People v. Lambert*, 195 Ill. App.3d 314, 141 Ill.Dec. 932, 938, 552 N.E.2d 300, 306, *appeal denied*, 132 Ill.2d 550, 144 Ill.Dec. 262, 555 N.E.2d 381 (1990).

The government demonstrated that Levine intended to retain Berry's money. The government showed that Levine took the $25,000 but avoided signing a contract. Instead of investing the money as promised, Levine deposited it in his father's checking account. *See Morrissey*, 89 Ill. Dec. at 234, 479 N.E.2d at 1240. Levine then spent the money on personal expenses, no doubt knowing that his financial situation prevented him from repaying the money. After Berry requested her money back, Levine ignored her phone calls, missed scheduled meetings, and lied about his plans for repayment. This evidence was not overcome by Levine's repayment of the money. Levine returned the money the day before his revocation hearing, admittedly under the threat of imminent revocation.

These facts distinguish Levine's case from *People v. Jensen*, 103 Ill.App.3d 451, 59 Ill.Dec. 219, 222, 431 N.E.2d 720, 723 (1982). Jensen told members of his church that he needed money to pay off a loan from the "mob." After hearing Jensen's story, his fellow congregants volunteered their money without specifying when, or even if, the defendant should repay them. Given this uncertain agreement between the parties, the court reversed the defendant's conviction. Although Jensen had broken one promise to repay and had not,

in fact, paid the defendants before trial, the court held this evidence insufficient to prove intent beyond a reasonable doubt. The evidence in Levine's case is more than sufficient to overcome the lesser "reasonably satisfied" standard.

### 4. The deception caused the transfer.

In her "Statement," Berry claimed that Levine's stories induced her to give him $25,000. Berry admitted that Levine's claims about the investor and the large-scale venture were "very convincing." She was also influenced by the fact that "Mr. Levine carried himself in a manner which invoked trust as a man, who amassed his own wealth and worked only, by his own words, because he loved his job and loved being busy." We find Berry's explanation convincing given the facts of this case. No rational lender would give $25,000 to an ex-convict who owed hundreds of thousands of dollars in restitution, especially if that man planned to use the money for personal expenses. Thus, we can assume that if Levine had not deceived Berry, she would never have lent him money.

Levine disputed this conclusion at oral argument.[4] He claimed that no rational person would believe that she could earn interest of $1,700 per month on a $25,000 investment. Levine reasoned that if Berry doubted his stories, but invested anyway, his lies did not cause her investment. Levine, however, made the high interest rate plausible by describing the money as a bridge loan that enabled his client to close a much larger deal. Although a savvy investor might have known that the rate was still too high, Berry's naivety does not negate Levine's crime.

### III. CONCLUSION

The district court had ample evidence to conclude, under the reasonable satisfaction standard, that Levine had violated state law. Accordingly, we AFFIRM the district

---

4. Because Levine raised this issue for the first time at oral argument, our inclination is to disregard it. We will, however, briefly address

the point in order to avoid revisiting the issue in a petition for rehearing.

court's finding and its judgment revoking Levine's probation.