2026 IL App (1st) 241584-U

No. 1-24-1584

Order filed June 16, 2026

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 23CR1872 |
| | ) | |
| MARIO WILSON, | ) | Honorable |
| | ) | Carol M. Howard, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE McBRIDE delivered the judgment of the court.
Presiding Justice Van Tine and Justice D.B. Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant's conviction for felony criminal damage to property is affirmed over his challenge to the sufficiency of the evidence regarding the monetary value of the damage.

¶ 2    Following a bench trial, defendant Mario Wilson was found guilty of felony criminal damage to property and sentenced to 24 months' probation and ordered to pay $1,000 of restitution. On appeal, defendant challenges the sufficiency of the evidence showing that he caused more than $500 in damage. We affirm.

¶ 3    Defendant was charged by felony complaint with one count of criminal damage to property exceeding $500 but not exceeding $10,000, for knowingly damaging Karen Arenas's property on November 19, 2022. 720 ILCS 5/21-1(a)(1) (West 2022).

¶ 4    At trial, Arenas testified that on November 19, 2022, she was driving her 2017 Maserati Levante eastbound in the middle lane of traffic on Chicago Avenue near where it intersected with Hudson Avenue. As Arenas approached the intersection, she saw a man, whom she identified in court as defendant, standing in the middle of the street. Arenas was unable to drive around defendant due to traffic in the lane on her left, and the bus lane on her right. Arenas gave her cell phone to her daughter, who was seated in the front passenger seat, and instructed her to record defendant. Arenas then took the cell phone and held it as it recorded. As Arenas recorded defendant, he approached the passenger side of the vehicle and "punched [the] side mirror very hard." Arenas stopped recording and called 911.

¶ 5    According to Arenas, after defendant struck her vehicle, he entered a CTA bus that was idling directly behind her. Arenas followed the bus until it reached the intersection of Chicago and State Street, where defendant exited the bus. Arenas exited her vehicle and relayed what had happened to nearby police officers. Arenas then ran after defendant, with the officers following, south on State. After Arenas told defendant to stop, he turned and approached her. The officers ordered Arenas to return to her vehicle, which she did. Approximately five minutes later, Arenas explained to the officers that defendant had struck her vehicle and she showed the officers the cell phone video of the incident. The officers arrested defendant.

¶ 6    The court entered the video into evidence. The cell phone video is included in the record on appeal and has been viewed by this court. The video, recorded from the driver's seat of Arenas's

vehicle, shows defendant standing in front of the vehicle as other vehicles pass in the left lane. A bus lane is visible to the right. Defendant approaches the passenger side of Arenas's vehicle. As defendant exits the frame, he raises his hand above his head and swings it downward with an audible impact sound.

¶ 7    Arenas further testified that she followed the officers to the police station, where she noticed damage to the passenger-side rearview mirror that defendant struck. She could not move the mirror, which was "way lower," and the video feed from the camera in the mirror to the vehicle's dashboard console displayed "a black screen." Arenas photographed the video feed on the dashboard console "immediately after." Arenas had purchased the vehicle "working in perfect condition" a few months before the incident and there had been no damage to her vehicle prior to defendant striking it.

¶ 8    The court entered the photograph of Arenas' vehicle's dashboard console into evidence. The photograph is included in the record on appeal and has been viewed by this court. The photograph shows a screen with what appears to be a computer-generated image of Arenas's vehicle as it would be seen from above. The screen depicts another vehicle on the left side of Arenas's vehicle and is black on the right side.

¶ 9    Arenas testified that she went to several auto repair locations to obtain repair estimates. Arenas ultimately took her vehicle to Perillo Collision Center (Perillo) on December 2, 2022, which quoted the lowest price she could find. Perillo estimated the cost to repair the damage to Arenas's vehicle at "about $3,300."

¶ 10    Amanda Johnson, a manager at Perillo, testified that she estimated vehicle damage. The court accepted Johnson as an expert in automotive collision estimates. Johnson assessed Arenas's

vehicle on December 2, 2022, observing "damage to the passenger side rearview mirror assembly and the molding that runs vertical on the windshield that runs on the passenger side." Johnson explained that the only way to repair the damage to the mirror would be to replace it. She prepared a written estimate of the damage, which the court entered into evidence. The estimate itemized the costs, including parts and labor, associated with repairing Arenas's vehicle as totaling $3,526.58. Johnson never viewed the cell phone video of the incident, and she was not aware of what caused the damage to the vehicle until the day of her testimony.

¶ 11    On cross-examination, Johnson testified that she also observed "visible scraping" on the passenger-side rearview mirror but no "loose components."

¶ 12    Johnson's repair estimate is included in the record on appeal and has been viewed by this court. The estimate describes several components of the vehicle requiring repair, replacement, or reinstallation. The cost of parts totaled $1,598.15, comprising $59.80 for "RT GARNISH MOLDING," $1,510 for "RT MIRROR HOUSING," and $28.35 for "RT MIRROR GLASS RETAINER." The corresponding "body labor" cost for those parts totaled $190. The "mechanical labor" cost associated with recalibrating the camera totaled $239. The estimate detailed other costs with the grand total equaling $3,526.58, for parts, labor, and sales tax.

¶ 13    The trial court found defendant guilty of Class 4 felony criminal damage to property. It determined that defendant had hit the vehicle, causing "more than $500 worth of damage," but was "not convinced beyond a reasonable doubt that [defendant's] actions caused $3300 worth of damage" since "hitting the car with an open hand didn't cause the scratches" and it was unclear whether defendant's actions damaged the camera. The court held that defendant was responsible for $1,000 of the damage and that amount "exceeds the amount necessary to kick it up to a Class

4 felony." The court elaborated that Arenas "would have to bear the remaining cost," because "she chose not to drive around."

¶ 14    The trial court denied defendant's posttrial motion, which argued there was "no proof beyond a reasonable doubt that [defendant's] actions caused any damage," or, in the alternative, requested a new trial.

¶ 15    The trial court sentenced defendant to 24 months of probation and ordered him to pay $1,000 of restitution.

¶ 16    On appeal, defendant argues that the State failed to show that he caused more than $500 in damage to Arenas's vehicle. Defendant requests that his Class 4 felony conviction for criminal damage to property be reduced to a misdemeanor.

¶ 17    Where a defendant challenges the sufficiency of the evidence supporting his criminal conviction, "a reviewing court, considering all of the evidence in the light most favorable to the prosecution, must determine whether any rational trier of fact could have found beyond a reasonable doubt the essential elements of the crime." *People v. Murray*, 2019 IL 123289, ¶ 19; see *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). We will not substitute our "judgment for that of the trier of fact on issues involving the weight of the evidence or the credibility of the witnesses." *Murray*, 2019 IL 123289, ¶ 19. This court "will not reverse a conviction unless the evidence is so improbable, unsatisfactory, or inconclusive that it creates a reasonable doubt of defendant's guilt." *People v. Collins*, 214 Ill. 2d 206, 217 (2005).

¶ 18    To prove criminal damage to property, the State must show that the defendant "knowingly damage[d] any property of another." 720 ILCS 5/21-1(a)(1) (West 2022). As charged here, the State alleged that defendant caused property damage exceeding $500 but not exceeding $10,000.

Property damage exceeding $500 but not exceeding $10,000 is a Class 4 felony. *Id.* § 21-1(d)(1)(F). When the State alleges criminal damage exceeding a specified value, "the extent of the damage is an element of the offense to be resolved by the trier of fact as either exceeding or not exceeding the specified value." *Id.* § 21-1(b). Defendant does not contest that he struck Arenas's passenger-side rearview mirror. Rather, he only challenges the sufficiency of the evidence supporting the damage amount.

¶ 19    The State does not need to prove the exact amount of damage in a criminal damage to property case. *People v. Davis*, 132 Ill. App. 3d 199, 203 (1985). However, the State must prove the minimum amount necessary to justify a felony conviction. *Id.* The cost of repairs required due to a defendant's conduct provides "an accurate indication of the damage suffered by the victim and is therefore a proper method by which to determine the defendant's criminal responsibility." *People v. Carraro*, 77 Ill. 2d 75, 80 (1979).

¶ 20    Viewing the evidence in the light most favorable to the State, we conclude that a rational trier of fact could find the evidence sufficient to prove defendant guilty of Class 4 felony criminal damage to property. Arenas testified that after defendant hit her passenger-side rearview mirror, the mirror was positioned "way lower" and the camera feed from that mirror to her dashboard console no longer functioned. Expert witness Johnson inspected that same mirror less than one month after that incident and determined it required replacement. Johnson prepared an itemized repair estimate totaling $3,526.58, which listed the right mirror housing part alone costing $1,510. See *People v. Chambers*, 2020 IL App (2d) 190041, ¶ 14 (finding a repair estimate sufficient to establish the amount of property damage). The State therefore presented sufficient evidence to allow a rational trier of fact to find beyond a reasonable doubt that defendant caused the statutory

minimum amount of $500 in damage to prove him guilty of Class 4 felony criminal damage to property.

¶ 21    Nonetheless, defendant contends that it was "unclear" how the trial court arrived at $1,000 in damages, noting the court's skepticism that defendant could have caused the entire damage to Arenas's vehicle. Defendant contends that Arenas's version of events was incredible, an inordinate length of time elapsed between the incident and the repair estimate, the State never produced photographs of "scraping" or the position of the passenger-side rearview mirror after the incident, and it is "common sense that a single strike from a hand is unlikely to cause scratches or scrapes on car paint."

¶ 22    Here, the trial court did not find that defendant caused the scratches on the vehicle. Although the court expressed doubt that defendant "caused $3300 worth of damage," it did find that defendant caused more than $500 worth of damage. We will not substitute our judgment regarding the trier of fact's determination regarding the extent of damage or reassess witness credibility. 720 ILCS 5/21-1(b) (West 2022); *Murray*, 2019 IL 123289, ¶ 19.

¶ 23    In sum, the State proved beyond a reasonable doubt that defendant caused damage to Arenas's vehicle exceeding $500. The evidence therefore was not "so improbable, unsatisfactory, or inconclusive that it creates a reasonable doubt of defendant's guilt" of Class 4 felony criminal damage to property. *Collins*, 214 Ill. 2d at 217.

¶ 24    For these reasons, we affirm the judgment of the circuit court of Cook County.

¶ 25    Affirmed.