THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TIMOTHY S. RINER, Defendant-Appellant.

Fourth District   No. 4—92—0089

Opinion filed September 30, 1992.

Daniel D. Yuhas and Karen Munoz, both of State Appellate Defender's Office, of Springfield, for appellant.

Tony Lee, State's Attorney, of Paxton (Norbert J. Goetten and Robert J. Biderman, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

Following a jury trial in the circuit court of Ford County, the defendant, Timothy Riner, was convicted of theft by deception. (Ill. Rev. Stat. 1991, ch. 38, pars. 16—1(a)(2)(A), (b)(2).) Defendant's prior record included two theft convictions and a burglary conviction. The defendant was sentenced to two years in the Illinois Department of Corrections and ordered to make restitution of $100. The defendant appeals, contending he was not proved guilty beyond a reasonable doubt because the State failed to prove he intended to permanently deprive John and Kathleen Carson of the use and benefit of their property. We disagree and affirm.

On November 4, 1991, Riner was tried by jury. John and Kathleen Carson testified on August 11, 1991, Riner visited their home. Riner and the Carsons discussed the removal of a dying cottonwood tree on the Carsons' property. During this conversation, Riner looked at the Carsons' used chain saw, which was not working properly. Riner repaired the chain saw by winding up a coil. He did not charge the Carsons for this job, which took only a few minutes. Riner also contracted with the Carsons to remove the tree. The Carsons testified the defendant told them he was employed by a tree service but would remove the tree on his own time. Mrs. Carson presented the defendant with a check in the amount of $100. The defendant gave the Carsons a receipt which stated, "one cottonwood tree southeast garage. $100 paid. Check #1560. 8—11—91. T.R. Tim Riner." Although the receipt did not specify the date by which the tree was to be removed, the Carsons testified Riner represented he would remove the tree on the following day. Mrs. Carson testified she stayed home and waited for Riner on August 12 and 13. Riner did not appear. He did, however, cash the check.

On August 15, 1991, Mrs. Carson went to Ace Hardware to make a purchase. Mrs. Carson saw Riner working as an employee at Ace. She asked Riner about removing the tree. Mrs. Carson testified Riner told her he would cut it down that night. Riner did not show up at the Carsons' house that night.

On August 16, 1991, Mr. Carson went to Ace Hardware to speak with Riner regarding the removal of the tree. Mr. Carson testified Riner was working at Ace, but left when Carson appeared. Later that evening, Riner telephoned Mr. Carson and informed Carson the tree would be cut down when Riner was "damn good and ready."

On August 30, 1991, Mr. Carson went to see Riner at Ace. Mr. Carson testified he requested Riner refund his money. Riner promised he would go to the Carsons' house that evening to discuss the removal of the tree. Again, Riner did not show up. The Carsons then reported the matter to the sheriff's department.

Officer Duffy testified he arrested Riner on the charge of theft by deception on September 24, 1991. The Carsons testified that on September 27, 1991, they received a bill for $100 from Riner for the repair of the chain saw. The bill was dated August 11, 1991. The envelope in which the bill was contained was postmarked September 26, 1991. Defendant's motion for a directed verdict at the close of the State's case was denied. The defendant then called three witnesses.

David Hahn testified he became acquainted with Riner when they were both employed by a tree service, and he and Riner were now neighbors. Hahn testified Riner mentioned a job cutting down a tree and consulted him regarding the rope which Riner planned to use. Hahn found the rope to be of poor quality and advised Riner to buy a stronger rope. Hahn testified this conversation took place toward the middle or end of August. Hahn admitted telling the investigating officer it took place in the middle of September. At first Hahn explained this inconsistency by stating he was using the beginning of the school year as his frame of reference, and, since the officer told him that the school year began in September, he thought the conversation must have occurred in September. However, later Hahn testified that he told the officer the conversation took place in late August.

Russell Noblett, the fiance of Riner's sister, testified he and Riner trimmed and cut trees together. Noblett testified Riner had contacted him regarding removing a cottonwood tree during the fall. Noblett could not remember the name of the owner of the property on which the job was to be performed. Nor could Noblett remember the names or addresses of any property owners for whom he and Riner had done previous jobs even though Noblett testified they had three or four jobs per month. Noblett testified the cottonwood tree was not cut down in August because it would have been too heavy. After the fall, once the sap had drained out of the tree, the tree would be much lighter. Noblett then testified that on the second to last weekend in

September, Riner told him they would be cutting down the tree on the following weekend.

Phillip Menninga testified he was a co-worker and a social friend of Riner. Menninga testified that the first weekend of August he and Riner placed an order for rope through Ace Hardware. Menninga and Riner did rappelling for a hobby. Menninga testified he planned to use his share of the rope for rappelling, and Riner had told him Riner's share would be used to remove a tree. Menninga testified the rope did not arrive until four to seven days before Riner was arrested. Menninga also testified he thought he was present for a short time on August 16, 1991, while Carson and Riner talked. Menninga testified he could hear a little bit of the conversation and believed Riner said he would get to the tree job as soon as he could.

The jury found Riner guilty of theft by deception. Riner was sentenced to two years' imprisonment and ordered to make restitution to the Carsons. Riner appeals, alleging the State presented insufficient evidence to prove his guilt beyond a reasonable doubt.

When a defendant challenges the sufficiency of the evidence, we do not retry the defendant. (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277.) Instead, once the defendant has been found guilty of the charged crime, we view the evidence in the light most favorable to the prosecution, and ask whether any rational trier of fact could have found the essential elements of the crime. *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789.

■ An individual may be found guilty of theft by deception where he obtains control over the owner's property by deception and intends to permanently deprive the owner of the use and benefit of the property. (Ill. Rev. Stat. 1991, ch. 38, par. 16—1(a)(2)(A).) Some cases brought under this section result from situations in which a defendant contracts with a person to perform services or deliver goods. The defendant then accepts money, but does not perform the contract. Often the defendants in these cases contend they did not intend to permanently deprive the owners of the use and benefit of their money; rather, the defendants argue, they just had not gotten around to performing the contract.

Where the defendant's actions between the time of the contract and the arrest manifest an intention to perform the contract, a conviction for theft by deception should not stand. However, in this case, the defendant's conduct between the making of the contract and the arrest demonstrate, and permitted the jury to infer, that he had no intention of performing the contract. The defendant's mere assertion

here that he had not gotten around to performing the contract will not negate the intent to permanently deprive.

In *People v. Wheadon* (1989), 190 Ill. App. 3d 735, 546 N.E.2d 1119, the appellate court affirmed defendant's conviction, despite defendant's contention he did not intend to permanently deprive the owners of the use and benefit of their money. Wheadon had taken some preliminary steps which he argued indicated he had the intention to perform the contract. In affirming his conviction, the appellate court found Wheadon converted the money he was given to his own use, represented himself as the president of a defunct corporation, and made only a token pretense of fulfilling the contract. Moreover, the court found Wheadon's actions, after the investigation had begun, to be of little persuasive value.

In *People v. McManus* (1990), 197 Ill. App. 3d 1085, 555 N.E.2d 391, the appellate court affirmed defendant's conviction for theft by deception although he claimed he did not intend to permanently deprive the owners of the use and benefit of their money. McManus falsely represented himself as affiliated with a publicly traded corporation. McManus took down payments on lots and homes on a tract of land which he did not own. McManus told his clients he would hold the down payments in an escrow account or in "jumbo" certificates of deposit; however, McManus used the money for the benefit of his company. Although McManus took steps to negotiate for the purchase of the lots and obtain construction financing, he did not *follow through* with these steps and could not have been reasonably expected to succeed.

Just as Wheadon and McManus misrepresented their business affiliations, Riner told the Carsons he was employed by a tree service. Riner, like Wheadon and McManus, used the money received for his own benefit. Riner alleges he took steps in preparation of performing the contract. Even if this contention is accepted as true, the *Wheadon* and *McManus* decisions indicate a token pretense at performing the contract is insufficient to overturn a jury's finding the defendant intended to permanently deprive the owner of the use and benefit of the money.

The defendant analogizes this case to *People v. Rolston* (1983), 113 Ill. App. 3d 727, 448 N.E.2d 965. Rolston had been trained by Thermal Industries and was an authorized dealer of Thermal Industries windows. According to company policy, Thermal would pay for shipping on orders of 100 or more windows; on orders of less than 100 windows, the dealer would be required to bear this cost. Rolston took orders from customers and accepted their down payments; how-

ever, he did not place their orders with Thermal, because he had not yet received orders for 100 windows. Rolston's conviction for theft by deception was reversed by the Third District Appellate Court, which held the State did not prove Rolston intended to *permanently* deprive his customers of the use and benefit of their money. The court found it significant that Rolston received professional training and had established a dealership for the purpose of selling the windows. Rolston had put the bulk of the down payments back into the business. Moreover, Rolston partially performed one contract and completed another. Rolston did not avoid his customers and reasonably explained his failure to order the windows.

The present case differs from *Rolston* in several ways. While Rolston did not avoid his customers, Riner fled from Carson on August 16, 1991. On August 30, 1991, Riner once again avoided Carson by agreeing to go to the Carsons' home to discuss the matter, and then failing to appear. Unlike Rolston, Riner did not perform any part of the contract, nor did he offer any reasonable explanation of his failure to perform. Riner promised he would remove the tree or go out to the Carsons' home on August 12, 15, and 30. He failed to show up on any of these occasions, and made no attempt to contact the Carsons to explain the reasons for his absence. The only communication Riner directed to the Carsons was that he would remove the tree when he was "damn good and ready."

Riner did not begin to explain his failure to remove the tree until after his arrest. However, even then Riner's excuses were not the rational explanations contemplated by the *Rolston* court, but a series of belated efforts to escape his predicament. Riner's first theory for failing to remove the tree was apparently that he did not do the job for the Carsons because they still owed him for previous work, *i.e.*, the bill for $100 (for the repair of a chain saw) mailed September 26 but dated August 11, 1991. The Carsons testified that on August 11, Riner told them there was no charge related to the chain saw. The defense presented no evidence in support of this theory at trial.

Another theory for the failure to remove the tree was presented through the testimony of Noblett. Noblett testified the tree was too heavy to be removed until after the fall, when the sap would have drained from the tree. However, Noblett also testified Riner told him—on the second to last weekend in September—that they would remove the tree on the last weekend of September. Noblett did not explain what had changed between August and September to suddenly enable them to remove the tree before the sap drained. No other evidence was offered in support of this theory at trial.

The defendant's third excuse for his failure to remove the tree was that he had equipment difficulties. Although the defense presented witnesses who testified Riner had discussed the removal of the tree, and had ordered supplies for the purpose of doing the job, it is uniquely within the province of the jury to weigh the evidence and the credibility of the witnesses. (*Collins*, 106 Ill. 2d at 261-62, 478 N.E.2d at 277.) We will not substitute our judgment for that of the jury on issues of witness credibility unless the evidence itself is so implausible, improbable or unsatisfactory as to raise a reasonable doubt of the defendant's guilt. *People v. Slim* (1989), 127 Ill. 2d 302, 307, 537 N.E.2d 317, 319.

The jury could have found the defense witnesses less credible due to their close association with the defendant and their difficulty in remembering dates and events. For example, Hahn had difficulty remembering exactly when his alleged conversations with Riner took place. Noblett testified to removing three or four trees per month with Riner, but could not remember the locations of the jobs performed. Menninga testified to believing he was present at a conversation between Riner and Carson at Ace on August 16, 1991; however, according to Carson's testimony, on that date Riner fled from Ace before Carson had a chance to speak with him. In this case, the jury could have reasonably found the defense witnesses to be lacking in credibility.

Moreover, the jury could have found that, even if credible, the testimony of the witnesses for the defense did not establish that Riner had equipment difficulties. The defendant contends he intended to remove the tree but, after consulting with Hahn, determined his rope was inadequate and ordered another rope for the job. The chronology of this scenario is conflicting with the testimony offered at trial. Riner contracted with the Carsons on August 11 to remove the tree on August 12. The alleged conversation in which Hahn advised Riner to purchase a new rope took place in either mid to late August or mid to late September. According to the testimony of Menninga, Riner did not order the rope during that time period. Rather, Riner began talking to Menninga about ordering rope around July 4 and the order was placed the first weekend in August, one week *prior* to Riner's contract with the Carsons and at least several weeks prior to his alleged consultation with Hahn. Moreover, the defendant's contention that he could not remove the tree due to difficulties with his rope has additional flaws. Riner did not communicate any equipment difficulties to the Carsons. Nor did Noblett, a man who allegedly performed three or four tree jobs per

month with the defendant, testify regarding any equipment difficulties. Noblett did not explain why the equipment used in the alleged other tree jobs was inadequate for this job. The jury could have reasonably determined the inconsistencies and shortcomings of the testimony of the defense witnesses rendered the story of equipment difficulties unbelievable.

■■ In this case the State presented sufficient evidence for a rational trier of fact to conclude Riner intended to permanently deprive the Carsons of the use and benefit of their property. The State presented testimony the defendant accepted a check for $100 on August 11, 1991, in return for a job to be completed on August 12, 1991. The defendant did not do the job at that time. Later he avoided the Carsons and failed to appear on several occasions when he promised he would do so. Simply put, he made assorted promises and failed to keep them. He also made no effort to contact the Carsons to explain. He promised to remove the tree on August 12, and the tree had not yet been removed by September 23 when an information was filed.

In view of Riner's failure to remove the tree or refund the money to the Carsons, and in light of his conduct during the months of August and September, a rational trier of fact could have determined Riner intended to permanently deprive the Carsons of the use and benefit of their property by keeping the $100 without performing the contract. The jury apparently believed Riner did not intend to remove the tree *or* refund the money.

That conclusion is supported by the evidence, and the judgment of the circuit court of Ford County is affirmed.

Affirmed.

COOK and LUND, JJ., concur.