THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EDWARD REICH, Defendant-Appellant.

Third District   No. 3—91—0656

Opinion filed March 3, 1993.

Joseph N. Ehmann, of State Appellate Defender's Office, of Ottawa, for appellant.

Edward Burmila, Jr., State's Attorney, of Joliet (John X. Breslin and Nancy Rink Carter, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SLATER delivered the opinion of the court:

Following a jury trial, defendant Edward Reich was convicted of theft by deception (Ill. Rev. Stat. 1987, ch. 38, par. 16—1(b)(1)) and sentenced to three years in prison. The trial court also ordered defendant to pay $57,292.96 in restitution. The conviction was based on a one-count indictment which alleged that between October 1988 and October 1989, the defendant committed the offense of theft by deception in that he fraudulently induced Arthur Orawaski to enter into a contract for the construction of a home. Defendant raises a number of issues on appeal. However, because we find it dispositive of this case, we address only defendant's contention that he was not proven guilty beyond a reasonable doubt.

Defendant was the owner of a construction company called Energywise. In 1987, Arthur Orawaski contacted defendant and inquired whether defendant could build a home for Orawaski and his wife. Orawaski planned to build a 4,150-square-foot house and had received price estimates ranging from $187,750 to $415,000. In October 1988, defendant and Orawaski entered into a contract whereby defendant agreed to build the house for $100,000. The contract contained no specific starting or completion dates.

Orawaski told defendant that he had approximately $56,000. The parties agreed that Orawaski would pay defendant for materials, labor and equipment as needed as the construction proceeded. The plan was for defendant to construct the "shell" of the house with the money Orawaski had on hand, and Orawaski would then get a construction loan so that the job could be completed. The contract was notarized on October 28, 1988, and construction began November 2.

Defendant and two or three of his employees began digging the foundation of the house by hand using shovels, pick axes and a rototiller. Defendant never used a backhoe or any other heavy equipment to dig the foundation. The work proceeded very slowly. The footings were poured in February 1989, the foundation walls in April, and garage floor in June. Orawaski worked personally on the project to help keep the costs down. He ultimately put nearly 500 hours of labor into the project by assisting in pouring concrete, tarring the foundation and completing other tasks.

By May 1989, Orawaski was getting concerned that the project was taking too long and costing too much. The deed for the lot upon which the house was to be built contained a covenant that required construction on the property to be completed within eight months. Orawaski and defendant met with the developer, Patrick O'Donnell, on July 11, 1989. O'Donnell threatened legal action if Orawaski did not fire defendant. Defendant did not return to the work site after July 11.

During the eight months in which defendant worked on the project, Orawaski periodically gave defendant checks and cash for materials and labor. By the end of June, 1989, Orawaski had paid defendant $57,292.96. When defendant left the site for the last time on July 11, only the foundation and a concrete floor for the garage were completed.

Real estate developer Patrick O'Donnell testified that he sold a lot in his Foxley Acres subdivision to Orawaski. O'Donnell was qualified as a construction expert by the trial court. He testified that the methods used by defendant to dig the foundation were very unusual, impractical and primitive. He stated that defendant's work was substandard and exhibited a lack of workmanship. He described the garage floor as being three to four inches "out of level." In O'Donnell's opinion, the foundation should have cost $14,500. He testified that it would have been impossible to build the house for $100,000. O'Donnell stated that, allowing for the work done by the defendant, he could complete the job for $242,300.

Police officer Gary Kraemer testified that he interviewed the defendant on November 2, 1989. Defendant told Kraemer that O'Donnell was harassing him and threatening court action. He told Kraemer that the problems in building the home stemmed from problems with the land. Kraemer testified that defendant claimed to have materials for the house, including windows, in storage. Kraemer confirmed that defendant did have approximately 22 used windows and other materials in storage.

Defendant testified on his own behalf. He stated that he had been in the construction business for 45 years. From 1979 to 1990 he ran a business called Energywise. His business was mainly limited to installing foam insulation and skylights, and constructing room additions to existing houses. During his 45 years in the construction business, he had built only three homes. He built one in 1953, one in 1956 and one in 1976.

In October 1988, defendant agreed to build Orawaski's house in the Foxley Acres subdivision for $100,000. Defendant had 12 people working the project at various times. Although defendant originally had no agreement with Orawaski as to when the entire home was to be completed, on May 24, 1989, defendant signed an agreement to have the structure up by September 1, 1989.

Defendant presented approximately 50 receipts for materials purchased for the project. The receipts totaled $25,509.91. Defendant stated that the labor cost for the work completed was $29,000. Defendant admitted that Orawaski had paid him nearly $58,000 of the $100,000 contract price. He also admitted that Orawaski gave him $9,600 for lumber which was never purchased, but defendant stated that he applied the money to other project costs.

Defendant testified that he stopped working on Orawaski's house in July 1989 because O'Donnell chased him off the property. Defendant told Orawaski that he could not return to work until Orawaski could protect him from O'Donnell and provide a safe work environment. Defendant stated that he believed he could have had the roof on by September 1 if O'Donnell had not interfered. At the time of trial defendant still had windows and other materials for the project in storage. Defendant believed he could complete the project for the contract price because he charged less for his labor and did not take a large profit on materials.

On cross-examination defendant acknowledged that the only receipts on which he had written Orawaski's name were the ones for concrete. Defendant again admitted that Orawaski had paid him

nearly $58,000, that he did not return any money and that he did not finish the home.

Defendant contends that he was not proven guilty beyond a reasonable doubt. When presented with a challenge to the sufficiency of the evidence, a reviewing court examines the evidence in the light most favorable to the prosecution, and the relevant question is whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.

■ To support a conviction for theft by deception the State must prove beyond a reasonable doubt that (1) the victim was induced to part with money; (2) the transfer of the money was based upon deception; (3) defendant intended to permanently deprive the victim of the money; and (4) defendant acted with the specific intent to defraud the victim. (*People v. Lighthall* (1988), 175 Ill. App. 3d 700, 530 N.E.2d 81.) The term "deception" means to knowingly "[c]reate or confirm another's impression which is false and which the offender does not believe to be true," or to "[p]romise performance which the offender does not intend to perform or knows will not be performed." Ill. Rev. Stat. 1987, ch. 38, pars. 15—4(a), (e).

Whether specific intent to defraud exists is a question of fact which may be established by circumstantial evidence. (*People v. Ballard* (1978), 65 Ill. App. 3d 831, 382 N.E.2d 800.) Proof of this element, however, cannot be based merely on supposition, guess or conjecture. (*People v. Jensen* (1982), 103 Ill. App. 3d 451, 431 N.E.2d 720.) While a jury's determination is entitled to great weight, a reviewing court has a duty to set aside a conviction when the evidence is so unsatisfactory that it raises a reasonable doubt of the defendant's guilt. (*People v. Gomez* (1991), 215 Ill. App. 3d 208, 574 N.E.2d 822.) We believe that in this case, the State has failed to establish the requisite criminal intent beyond a reasonable doubt.

To prove the elements of deception and intent to defraud, the State presented evidence to show that defendant could not build the house for $100,000. This may or may not have been the case. However, a defendant's failure to perform on a contract is not proof of a specific intent to defraud. (*People v. Jensen* (1982), 103 Ill. App. 3d 451, 431 N.E.2d 720; Ill. Rev. Stat. 1987, ch. 38, par. 15—4(e) (failure to perform standing alone is not evidence that the offender did not intend to perform).) The State was also required to prove that at the time defendant agreed to build the house he had no intention of building it or did not believe he could build it for $100,000. The State failed to prove this beyond a reasonable doubt.

The State contends that the impractical methods and substandard equipment used by the defendant, when viewed in light of his knowledge and experience in the construction business, established that defendant never really intended to perform on the contract. While it is true that defendant has been in the "construction business" for 45 years, his business consisted mainly of installing foam insulation and building additions to existing homes. During his 45 years in business he built only three homes; one in 1953, one in 1956 and another in 1976. The defendant was obviously not an experienced home builder. This is further evidenced by the fact that defendant dug the foundation for the house by hand rather than renting a backhoe.

■ Displaying poor workmanship, however, is not a crime, and the State's contention that defendant merely "put on a show, went through the motions, in order to slowly bleed [the Orawaskis] of all the money they had" is not supported by the record. Defendant did in fact attempt to build the house. He put substantial time and effort into the project for eight months. This evidence weighs against the State's characterization of the defendant as a mere "con man."

Moreover, the fact that Orawaski repeatedly gave defendant money upon request does not prove an intent to defraud. The agreement between the parties was that Orawaski would finance the project as it progressed, giving defendant money as needed. Nor is an intent to defraud established by the fact that defendant used substandard equipment and materials. On the contrary, this shows an intent on defendant's part to attempt to build a $200,000 to $400,000 house for less than half price as promised. Defendant testified that he believed he could keep the price down by not taking much profit on materials and keeping his wage low.

While the evidence establishes the possibility that defendant never intended to build the house for $100,000, this element, like all other elements of the offense, must be proven beyond a reasonable doubt. We believe the State failed to meet its burden of proof. The evidence of defendant's poor workmanship, even in conjunction with his construction experience, was simply insufficient to establish an intent to defraud on defendant's part.

There is no question that defendant failed to perform on the contract and caused the Orawaskis to suffer significant financial and emotional hardship. They may have a civil claim against defendant. Based on the record before us, however, we are unable to find that the State established beyond a reasonable doubt that defendant's conduct amounted to theft.

In light of our findings stated above, we need not address the other issues raised by defendant on appeal. The judgment and sentence of the circuit court of Will County is reversed.

Reversed.

BARRY and STOUDER, JJ., concur.