THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CARLOS
E. MORAN, Defendant-Appellant.

Second District No. 2—92—0519

Opinion filed April 19, 1994.—Rehearing denied May 17, 1994.

Josette Skelnik, of Law Offices of Josette Skelnik, of Elgin, for appellant.

James E. Ryan, State's Attorney, of Wheaton, and Gregory M. Skinner, of Belleville (William L. Browers and Marshall M. Stevens, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE COLWELL delivered the opinion of the court:

Defendant, Carlos Moran, was convicted after a bench trial of theft by deception (Ill. Rev. Stat. 1989, ch. 38, par. 16—1(b)(1) (now 720 ILCS 5/16—1(b)(1) (West 1992))) for allegedly presenting a falsified document to Chicago Title and Trust Company, Inc. (Chicago Title), in order to obtain a disbursement of funds. The trial judge sentenced defendant to 24 months' probation. He also ordered defendant to pay restitution to complainant, Forest Drywall (Forest), in the amount of $6,477. Defendant raises two issues on appeal. First, he contends that the State did not prove him guilty of theft by deception beyond a reasonable doubt because it did not prove that he intended to deprive Chicago Title of its property permanently. He argues in the alternative that the trial court erred in awarding restitution to Forest because Forest was not a victim. We affirm in part and vacate in part.

On September 25, 1991, the State filed a three-count indictment against defendant. Count I charged defendant with theft for knowingly exerting unauthorized control over the property of Forest Drywall (Ill. Rev. Stat. 1989, ch. 38, par. 16—1(a)(1) (now 720 ILCS 5/16—1(a)(1) (West 1992))); count II charged defendant with theft by deception; and count III charged defendant with forgery for, with the intent to defraud, knowingly making a document apparently capable of defrauding another (Ill. Rev. Stat. 1989, ch. 38, par. 17—3(a)(1) (now 720 ILCS 5/17—3(a)(1) (West 1992))).

The State presented the following evidence at defendant's March 30 and March 31, 1992, trial. Defendant was the president of Gayle Homes, a company that builds houses. Old Kent Bank (Bank) loaned Gayle Homes the funds with which to build a house on a parcel of property at 1504 Wiesbrook, Wheaton. On June 28, 1990, Gayle Homes entered into an agreement with the Bank entitled "Construction Loan Escrow Trust" (escrow agreement) whereby Chicago Title was to disburse the loan funds to defendant when defendant supplied it with certain documentation. Defendant was required to supply a sworn statement listing the contractor's contracts with subcontractors and suppliers. Defendant was also required to supply a waiver of mechanic's lien demonstrating that a subcontractor had performed certain work and had been paid for that work.

Ronald Vogel, a title officer at Chicago Title, testified that Chicago Title acted as the escrow agent for funds that defendant and Gayle Homes had borrowed from the Bank in connection with the construction of the home at 1504 Wiesbrook. Defendant subsequently submitted to Chicago Title four sworn documents: "Waiver of Lien to Date," dated September 21, 1990; "Sworn Statement for Contractor and Subcontractor to Owner," also dated September 21, 1990; "Final Waiver of Lien," dated November 9, 1990; and another sworn statement, dated November 9, 1990. All four of these documents listed Gayle Homes as the drywall subcontractor. The two lien waiver documents listed Allied Drywall as the supplier of the drywall supplies.

According to Vogel, the funds in escrow at Chicago Title actually constituted funds that defendant had borrowed from the Bank. Vogel also testified that it was common for a general contractor to obtain funds by submitting lien waivers to Chicago Title and then to pay the subcontractors out of those funds rather than paying the subcontractors before receiving the money. However, Chicago Title would not disburse money to a contractor if it knew that the documentation that the contractor had supplied was false.

Judith Burns, escrow administrator at Chicago Title, testified that defendant submitted documentation to her on September 21, 1990, in order to obtain a partial disbursement. Defendant supplied a waiver of lien which stated that Gayle Homes had provided $11,500 worth of drywall supplies and services. Defendant requested a partial payment from Chicago Title of $10,000 based on that waiver. Burns watched defendant sign the waiver of lien. She then notarized the document and disbursed $56,400 to defendant, based on several waivers. Burns testified that sometimes a general contractor will submit a lien waiver that states that the general contractor performed certain work, when, in fact, the general contractor has already paid or is planning to pay a subcontractor for that work. According to Burns, this practice is common for carpentry and painting. Although such a practice is rare for drywalling, she had seen it done.

Carolyn Tsironis, a construction escrow clerk with Chicago Title, testified that on November 9, 1990, defendant submitted a document to her which stated that Gayle Homes had performed drywalling on a home at 1504 Wiesbrook. This transaction took place immediately prior to the closing on the sale of the property. Tsironis had never known a general contractor to obtain funds by stating that it had performed certain work and then use those funds to pay a subcontractor that actually did the work.

John Lipuma, the owner of Forest, testified that in August 1990 defendant contracted with Forest to drywall the house at 1504 Wiesbrook. Lipuma admitted that his proposal, which constituted the only written contract between Forest and defendant, was unsigned. Lipuma testified that Forest subsequently completed the work at that house. Oswego Building Supply supplied the materials. To Lipuma's knowledge, no other company performed drywall work on that house. Forest billed Gayle Homes for $8,372. Lipuma testified that he requested payment from defendant on numerous occasions and, while defendant continually promised to pay, defendant made no payments to Forest until after he had been indicted. Defendant requested that Lipuma execute a waiver of lien, but Lipuma refused to do so before being paid. Lipuma never gave defendant permission to represent that Forest had been paid for the drywall job. Lipuma obtained a mechanic's lien against the home in January 1991. Lipuma filed suit against defendant in May 1991 in order to collect $8,782 for work that Forest had performed. This lawsuit was pending when Lipuma contacted the State's Attorney about the matter.

Lipuma admitted that Forest returned to do additional drywall work on the house after defendant informed Forest that the job was incomplete. Lipuma did not remember defendant contacting Forest a second time about incomplete work. According to Lipuma, defendant never informed Forest that he wanted to set off the cost of having another company complete the job.

Craig Wargo, an employee of Forest, testified that defendant agreed over the telephone to hire Forest for the drywall work at 1504 Wiesbrook. Forest completed the project during the last two weeks of August. Wargo personally walked through the house and verified that the job was complete. At some point, defendant had asked Forest to patch up a couple of areas in the house. This work was added to the bill.

Gary Stewart, an investigator for the Du Page County State's Attorney, testified that he interviewed defendant on August 19, 1991. Defendant admitted that Forest performed the drywall work at 1504 Wiesbrook. Defendant admitted that he submitted documentation to Chicago Title which stated that Gayle Homes performed the drywall work in order to obtain disbursements totalling $11,500. Defendant also admitted to signing the documents. Defendant explained that he submitted the documents naming Gayle Homes as the drywall subcontractor because he did not have a written contract with Forest. Defendant also admitted that he had not paid Forest. Defendant explained that he had used the funds disbursed to him for the drywall work in order to cover other expenses. Defendant stated that

Forest and Gayle Homes were involved in a civil lawsuit that he was attempting to settle.

At the close of the State's case, the trial court entered a directed finding on counts I and III. The trial court declined to direct a finding on count II because, according to the statute that defines theft by deception, an owner could be any person who has a possessory interest in the property involved. Under that broad definition, Chicago Title was an owner of the funds that it disbursed to defendant.

Defendant called Vogel, who testified concerning the escrow agreement. Under this agreement, the Bank loaned defendant money secured by the property at 1504 Wiesbrook. Chicago Title was not actually a party to this agreement but acted as an escrow agent. The agreement contained provisions outlining the conditions under which Chicago Title was to disburse the borrowed funds to defendant. According to the agreement, Chicago Title was only to disburse funds after obtaining the proper waivers of mechanic's liens and sworn statements. If defendant did not submit the proper documentation for obtaining a disbursement, the Bank would instruct Chicago Title whether to make the disbursement.

Defendant testified that Gayle Homes had entered into escrow agreements with Chicago Title for each of the 22 homes that it had built. When defendant obtained the loan for 1504 Wiesbrook in June 1990, he listed Gayle Homes as the drywall subcontractor. At that time, he intended that Gayle Homes would perform the drywall work as it had done in every other home that it had built. Because defendant was under time pressures to build the house, however, he was forced to subcontract the drywall work to a third party. He subcontracted the drywall work to Forest because Forest's representatives claimed that Forest could perform the work right away. When defendant attempted to obtain a payment from Chicago Title in September 1990, he did not amend the documentation to reflect that he had hired Forest because he wanted the documentation to be consistent with the documentation that he had originally supplied to the Bank. Defendant testified that when he received the $56,400 disbursement from Chicago Title, he placed that money in Gayle Homes' bank account and used it to meet various expenses.

Defendant claimed that part of his dispute with Forest was that Forest did not complete the drywall job. According to defendant, there were areas in the house that were not sanded and areas that were not properly taped. When Forest insisted on charging extra to do the work, defendant hired another company, Du Page Decorating, to complete the work. Defendant attempted to settle the dispute with

Lipuma during November and December 1990. Defendant claimed that Lipuma called him names and hung up on him. Lipuma met defendant at defendant's candy store several times in January and February 1991 and Lipuma was very hostile to defendant. Defendant determined that he could not settle the dispute with Lipuma by himself and he informed Lipuma that they should communicate through attorneys. Defendant denied asking Lipuma for a waiver of mechanic's lien. Defendant stated that, although Forest performed much of the drywall work on the house, Gayle Homes was the contractor in charge of the drywall. He believed, therefore, that the documentation that he submitted to Chicago Title listing Gayle Homes as drywall subcontractor was truthful and that he did not need a release from Forest.

The trial court found defendant guilty of theft by deception. The trial court specifically found that Forest performed the drywall work. It further found that defendant should have informed Chicago Title that Forest was the drywall subcontractor before he obtained the disbursement of funds. The trial court concluded, therefore, that defendant had obtained the funds from Chicago Title by deception. The trial court subsequently denied defendant's motion to reconsider its decision.

At the sentencing hearing defendant testified that Gayle Homes had reached a settlement with Forest whereby Gayle Homes was making monthly payments to Forest in order to satisfy its debt to Forest for the drywall work. At the time of the sentencing, Gayle Homes had made three $700 payments. The trial court sentenced defendant to two years' probation. It also ordered him to pay restitution to Forest in the amount of $6,477. It also imposed a $750 fine with the option to satisfy that fine by completing 150 hours of public service work. Defendant filed a timely notice of appeal.

We will first address defendant's contention on appeal that he was not proved guilty of theft by deception. A conviction will not be reversed for insufficient evidence unless the evidence, when viewed in the light most favorable to the prosecution, is so deficient that no reasonable trier of fact could have found each of the elements of the offense beyond a reasonable doubt. *People v. Reich* (1993), 241 Ill. App. 3d 666, 670.

■ Defendant was convicted of the offense of theft by deception as defined in section 16—1(a)(2)(A) of the Criminal Code of 1961 (Ill. Rev. Stat. 1989, ch. 38, par. 16—1(a)(2)(A) (now 720 ILCS 5/16—1(a)(2)(A) (West 1992))), which provides:

"A person commits theft when he knowingly:
***

(2) Obtains by deception control over property of the owner; [and]

* * *

(A) Intends to deprive the owner permanently of the use or benefit of the property."

In order to convict a defendant of theft by deception, the State must prove "(1) the victim was induced to part with money; (2) the transfer of the money was based upon deception; (3) defendant intended permanently to deprive the victim of the money; and (4) defendant acted with specific intent to defraud the victim." (*People v. McManus* (1990), 197 Ill. App. 3d 1085, 1096; accord *People v. Riner* (1992), 234 Ill. App. 3d 733, 736; *People v. Lighthall* (1988), 175 Ill. App. 3d 700, 705-06.) An owner is "a person, other than the offender, who has possession of or any other interest in the property involved, even though such interest or possession is unlawful, and without whose consent the offender has no authority to exert control over the property." (Ill. Rev. Stat. 1989, ch. 38, par. 15—2 (now 720 ILCS 5/15—2 (West 1992)).) The term "owner" encompasses a person who has "authorized control" over the property, even where that person possesses the property for the benefit of a third party. *People v. Smith* (1967), 90 Ill. App. 2d 388, 396.

In this case, there is no serious dispute that Chicago Title was the owner of the funds in question within the meaning of the statute. Chicago Title clearly possessed the property. There is also no dispute that Chicago Title was induced to part with the money when defendant presented documents to Chicago Title listing Gayle Homes as the drywall subcontractor and stating that Gayle Homes had been paid.

Defendant contends, however, that the State did not prove that he acted with the intent to defraud Chicago Title. Defendant points out that he presented evidence that his actions constituted common practice. In addition, defendant had testified that he did not believe there was anything wrong with listing himself as the subcontractor in order to obtain the funds from Chicago Title.

Whether defendant acted with the intent to defraud is a question of fact which must be resolved by the trier of fact. (*People v. Schwartz* (1991), 222 Ill. App. 3d 1041, 1048; *People v. Rolston* (1983), 113 Ill. App. 3d 727, 731.) We note that the escrow agreement provided that Chicago Title could not disburse loan funds to defendant until defendant provided assurances that the subcontractors had waived their right to place a mechanic's lien on the property. A mechanic's lien can have priority over a mortgage lien. (See *Components, Inc. v. Walter Kassuba Realty Corp.* (1978), 64 Ill. App. 3d 140, 142-43; 770 ILCS

60/7 (West 1992).) The escrow agreement, therefore, protected the Bank's interest as a mortgagee because, in effect, the Bank would not relinquish the loan proceeds unless the property was free from adverse claims by subcontractors. By listing his own company as the drywall subcontractor, rather than the company that actually performed the work, defendant subverted the purpose of the contract. Defendant submitted to Chicago Title a waiver of mechanic's lien when, in fact, the house was vulnerable to a mechanic's lien by Forest.

The fact that defendant's actions were contrary to the terms of his contract with the Bank implies that defendant knew his actions were not entirely above board. Furthermore, Vogel testified that Chicago Title would not disburse funds based on documentation that it knew contained false information. Therefore, a reasonable trier of fact could have found that defendant acted with the intent to defraud. The trial court made that finding when it stated defendant "should have disclosed to [Chicago Title] that [Forest] was the subcontractor."

Defendant also contends that the State did not prove that he intended to deprive Chicago Title, a mere escrow agent, permanently of the use and benefit of the funds, because he intended to repay his loan to the Bank and to settle his debt with Forest. Nothing in the record suggests that defendant did not intend to repay his loan from the Bank. Furthermore, the trial court evidently agreed with defendant that Forest had no possessory interest in the funds that defendant obtained from Chicago Title, since the court directed a verdict on count I alleging theft from Forest.

However, the trial court correctly found that Chicago Title did have a possessory interest in the funds. Chicago Title was entitled to possess the funds until defendant presented it with the proper documentation. Such possession is a *raison d'etre* of Chicago Title and constitutes use and benefit of the funds. The record is clear that defendant never intended to return the funds to Chicago Title. It follows that he intended to deprive Chicago Title of the funds permanently.

■ Although we conclude that defendant was properly convicted of count II, theft by deception, we agree with defendant that the court's order directing defendant to pay restitution to Forest was unauthorized by statute.

A trial court has the authority under section 5—5—6 of the Unified Code of Corrections (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—6 (now codified, as amended, at 730 ILCS 5/5—5—6 (West 1992))) to order a defendant to pay restitution to the victims of a criminal offense of which the defendant has been convicted. Section 5—5—6(b)

states that "the court shall assess the actual out-of-pocket expenses, losses, damages, and injuries suffered by the *victim named in the charge and such other victims* who may also have suffered out-of-pocket expenses, losses, damages, and injuries proximately caused by the same criminal conduct of the defendant." (Emphasis added.) Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—6(b) (now codified, as amended, at 730 ILCS 5/5—5—6(b) (West 1992)).

Section 5—1—22 of the Unified Code of Corrections (Ill. Rev. Stat. 1989, ch. 38, par. 1005—1—22 (now 730 ILCS 5/5—1—22 (West 1992))) adopts the meaning of "victim" in section 3 of the Bill of Rights for Victims and Witnesses of Violent Crime Act (Ill. Rev. Stat. 1989, ch. 38, par. 1403(a) (now 725 ILCS 120/3(a) (West 1992))) and is limited to victims of violent crimes only. In *People v. Gaytan* (1989), 186 Ill. App. 3d 919, this court applied section 5—5—6 more broadly to victims other than from violent crimes and "further look[ed] to whether property was taken, property damage was incurred, or personal injury sustained." *Gaytan*, 186 Ill. App. 3d at 929; see also *People v. Lowe* (1992), 153 Ill. 2d 195 (a court may order that restitution be paid to a victim of nonviolent crime).

We do not believe that Forest was a victim as contemplated by the restitution statute, even under the expanded definition enunciated in *Gaytan*. No property belonging to Forest was taken by defendant, nor was property damage incurred or personal injury sustained. The record indicates that at the time of the sentencing, defendant's company, Gayle Homes, had made three $700 payments to Forest pursuant to a settlement agreement. Just as a debtor-creditor relationship cannot be the basis for criminal liability (*People v. Buffalo Confectionery Co.* (1980), 78 Ill. 2d 447, 462; *People v. Berke* (1992), 236 Ill. App. 3d 322, 328), the criminal justice system cannot be allowed to be used as a collection agency for a civil litigant. Accordingly, the order directing defendant to pay restitution to Forest is vacated.

The judgment of the circuit court of Du Page County is affirmed in part and vacated in part.

Affirmed in part; vacated in part.

INGLIS, P.J., and QUETSCH, J., concur.