NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 190677-U

NO. 4-19-0677

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 14, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| MATTHEW CARBY, | ) | No. 17CF249 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer Hartmann Bauknecht, |
| | ) | Judge Presiding. |

_____

JUSTICE CAVANAGH delivered the judgment of the court.
Justices Holder White and Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*:  (1) When the State's evidence sufficiently proved defendant obtained unauthorized control over others' property with the intent to permanently deprive them of the property, the State sufficiently proved defendant guilty of theft beyond a reasonable doubt.

(2) Trial counsel was ineffective for failing to file a motion to dismiss one count of theft as alleged in the information as time-barred.

¶ 2    After a bench trial, defendant, Matthew Carby, was convicted of 10 counts of theft and sentenced to 24 months' probation and 180 days in jail, with 90 days stayed. He raises two arguments on appeal. First, he contends the evidence was insufficient to prove him guilty beyond a reasonable doubt when the State failed to prove he exerted unauthorized control over others' property with the intent to permanently deprive them thereof. Second, he argues his trial counsel was ineffective for failing to file a motion to dismiss one count of theft as barred by the applicable statute of limitations. We disagree the evidence was insufficient, but we agree that his counsel

should have moved for dismissal of one count and we, therefore, vacate that count as explained below. We otherwise affirm.

¶ 3                                    I. BACKGROUND

¶ 4          From 2008 to 2012, defendant was a licensed taxidermist. In 2012, his license expired. In 2015, several customers complained that defendant had failed to complete their requested jobs and refused to provide a refund or return their animals. After the February 2016 execution of a search warrant of defendant's home and office, the State decided to prosecute defendant for theft.

¶ 5          On August 4, 2017, the State charged defendant by information with 10 counts of theft, two of which were Class 3 felonies due to the value of the property, and the remainder were Class A misdemeanors. See 720 ILCS 5/16-1(a)(1)(A), (b)(1), (b)(4) (West 2016). Each count alleged defendant exerted unauthorized control over specified wildlife of the named victim intending to deprive that individual permanently of the use or benefit of the property. Each count named a specific individual as the victim.

¶ 6          At the November 2018 bench trial, the State called as witnesses three of the individuals named as victims in the information: (1) Ryan Donovan (count III), (2) Ross Lentman (count IV), and (3) Sam Fitzpatrick (count X). Of those witnesses, defendant challenges only his conviction related to Donovan.

¶ 7          Donovan testified, in November 2012, he delivered to defendant a 10-point whitetail deer buck and $200 cash deposit for a shoulder mount. Defendant gave him a handwritten receipt. Beginning in January 2015, Donovan began texting defendant about the progress. He said he knew defendant had some health problems, so he was "willing to give him some time."

- 2 -

Defendant advised Donovan his mount was being worked on but, by November 2015, Donovan had not received the trophy or a refund.

¶ 8         The other victims' statements were the subject of an evidentiary stipulation. According to that stipulation, Marvin Wilts (count I) delivered 10 animals to defendant for taxidermy work between 2011 and 2015. He had not received any finished or unfinished products from defendant.

¶ 9         Ken Sparks (count II) delivered one deer and one coyote in 2012. He paid defendant $900. He had not received a refund or any finished or unfinished products from defendant.

¶ 10         Jeffrey Moritz (count V) delivered one deer in 2012. He made repeated inquiries of defendant but had received no product.

¶ 11         Logan Sparks (count VI) delivered one deer in 2012. He made repeated inquiries of defendant but received no product.

¶ 12         David Swiskoski (count VII) delivered one deer and $150 in 2012. He made repeated inquiries of defendant but received no product or refund.

¶ 13         Nicholas Daugherity (count VIII) delivered one deer and $100 in 2013. He made repeated inquiries of defendant but received no product or refund.

¶ 14         Russell Koetz (count IX) was also the subject of the stipulation, though defendant does not contest his conviction on this count.

¶ 15         The State also called Matthew Graden, a conservation police officer, who testified he served a search warrant on defendant's residence and business on February 18, 2016. Defendant advised Graden it had been two to three years since he had been actively engaged in the business of taxidermy. However, Graden found specimens taken in after that timeframe. For example, one

whitetail deer skull cap with antlers had a 2015 firearm tag attached. Defendant admitted his taxidermy license had expired in January 2012.

¶ 16       Graden testified he recovered 94 items of wildlife with no associated paperwork or records. He made clear a taxidermist was required to keep records and tag the various specimens. Graden said: "[Defendant] had virtually no records in his possession at all." For example, Graden testified he found a freshly killed deer with antlers with no records or tags. He said defendant admitted to him he had sold Lentman's two red foxes and coyote because, according to defendant, Lentman had failed to claim them.

¶ 17       The State rested. As defendant argues in this appeal, his counsel did not move for a directed verdict at the close of the State's case.

¶ 18       Defendant took the stand in his own defense. He testified he began a taxidermy career in 2008 after a "real bad" back injury in 2004. He had six back fusion surgeries; the last one in 2012. In 2014, he started having "real bad vertigo attacks" preventing him from working for one and a half years. He said in June 2015, he tried to commit suicide because he was so far behind in his work. He texted the 10 victims named in the information, explaining that he was behind but, because they were his "friends," he continued to make promises he was unable to fulfill.

¶ 19       The following exchange occurred:

> "Q. Now, was it ever your intention to take these items from them?
>
> A. No.
>
> Q. Was it ever your intention to hide it or keep it from them?
>
> A. Nothing was hidden. Nothing was taken. Everything was left in the shop, just not worked on."

¶ 20    Defendant testified none of the named victims demanded his money or wildlife returned.

¶ 21    At the close of the evidence, the trial court found defendant was "not a credible witness," noting several inconsistencies between his testimony and that of other witnesses and among his own prior statements. The court found defendant "had no intent of ever completing the jobs." The court stated:

> "From a circumstantial evidence standpoint, you clearly did nothing at all except for drag these people on excuse after excuse for just an extraordinarily long period of time.
>
> On your examination, you were very evasive. You were non-responsive. You just said whatever you thought you could say to get out of it, and I don't think you are a credible witness. I think all of the evidence indicates that you had no intent of ever returning any of this property.
>
> So I do find that the State has met its burden of proof in connection with all counts. I find the [d]efendant guilty of counts 1 through 5 [(*sic*)]."

¶ 22    After denying defendant's motion for a new trial, the trial court entered "the judgment of conviction on counts 1 through 10" and sentenced defendant to 24 months' probation and 180 days in jail, with 90 days stayed pending compliance of probationary terms.

¶ 23    This appeal followed.

¶ 24                                  II. ANALYSIS

¶ 25                            A. Sufficiency of Evidence

¶ 26    Defendant claims the State failed to sufficiently prove he was guilty of theft. He admits he accepted cash and wildlife from customers and admits he failed to furnish a service or a

product in return. However, he claims his failure to finish the work did not constitute the intent to permanently deprive his customers of their property. In the alternative, he claims his counsel was ineffective for failing to move for a directed finding at the close of the State's evidence when, according to defendant, he was convicted on *his* testimony and not on the State's evidence. We affirm.

¶ 27 A reviewing court will not set aside a criminal conviction unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). On a challenge to the sufficiency of the evidence, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This standard applies regardless of whether the evidence is direct or circumstantial and circumstantial evidence meeting this standard is sufficient to sustain a criminal conviction. *People v. Jackson*, 232 Ill. 2d 246, 281 (2009).

¶ 28 The trier of fact has the responsibility to assess the credibility of the witnesses, weigh their testimony, and draw reasonable inferences from the evidence. *People v. Heard*, 187 Ill. 2d 36, 84 (1999). The testimony of a single witness, if positive and credible, is sufficient to convict, even though it is contradicted by the defendant. *People v. Morehead*, 45 Ill. 2d 326, 329-30 (1970). A reviewing court will not reverse a conviction simply because the evidence is contradictory. *People v. Berland*, 74 Ill. 2d 286, 306 (1978). We will not substitute our judgment for that of the trier of fact. *People v. Cooper*, 194 Ill. 2d 419, 431 (2000); *People v. Kotlarz*, 193 Ill. 2d 272, 298 (2000).

¶ 29    To prove defendant guilty of theft as charged, the State was required to prove beyond a reasonable doubt that defendant knowingly obtained or exerted unauthorized control over the named individual's property with the intent to deprive that individual permanently of the use or benefit of the property. See 720 ILCS 5/16-1(a)(1)(A) (West 2016). Defendant argues the State failed to prove he had "unauthorized control" over the property and that he had the requisite intent to permanently deprive the individual of their wildlife or cash.

¶ 30    "Obtains control" is defined as including but not limited to "the taking, carrying away, or the sale, conveyance, or transfer of title to, or interest in, or possession of property." 720 ILCS 5/15-8 (West 2016). Thus, we can surmise that when one "obtains *unauthorized* control over the property of the owner" as specified in the theft statute that he has taken, sold, or possessed the property of another without that person's authorization or consent.

¶ 31    "Permanently deprive" means to:

"(a) Defeat all recovery of the property by the owner; or

(b) Deprive the owner permanently of the beneficial use of the property; or

(c) Retain the property with the intent to restore it to the owner only if the owner purchases or leases it back, or pays a reward or other compensation for its return; or

(d) Sell, give, pledge, or otherwise transfer any interest in the property or subject it to the claim of a person other than the owner." 720 ILCS 5/15-3 (West 2016).

¶ 32    Whether a defendant "[i]ntends to deprive the owner permanently of the use or benefit of the property" is determined only by the defendant's actions (intended or performed) toward the owner's property. *People v. Haissig*, 2012 IL App (2d) 110726, ¶ 32. That is, proof of

intent could include the defendant's use, abandonment, or concealment of the property, or consist entirely of his initial taking or control over the property under circumstances suggesting that he intends to permanently retain it. *Id.*

¶ 33        "The knowledge and intent necessary for a theft charge need not be proven by direct evidence and may, instead, be proven indirectly by inference or by deduction made by the trier of fact based upon the facts and circumstances of the case." *People v. Cameron*, 2012 IL App (3d) 110020, ¶ 32. "Evidence of intent to permanently deprive the owner of property is usually circumstantial, including inferences drawn from the facts and circumstances as well as 'the act of theft itself.' " *People v. Moore*, 2021 IL App (1st) 172811, ¶ 205 (quoting *People v. Kotero*, 2012 IL App (1st) 100951, ¶ 31). Thus, the intent to permanently deprive "may ordinarily be inferred when a person takes the property of another," particularly "when the owner of the property is a stranger to the accused." *People v. Veasey*, 251 Ill. App. 3d 589, 592 (1993). Concealment of property and fraudulent or deceptive acts are also circumstances supporting an inference of an intent to permanently deprive. *Id.* "Intent may also be inferred from the lack of evidence of intent to return the property or to leave it in a place where the owner could recover it." *Kotero*, 2012 IL App (1st) 100951, ¶ 31.

¶ 34        Similar to cases involving theft by deception, this case involved defendant contracting with individuals to perform services or deliver goods but, after accepting money from the individuals, defendant failed to perform the contract. See *People v. Riner*, 234 Ill. App. 3d 733, 736 (1992) (stating the evidence was sufficient to find the defendant guilty of theft by deception where the defendant's conduct between making the contract and his arrest demonstrate he had no intention of performing). As this court noted in *Riner*, often the defendant contends he did not

intend to permanently deprive the individuals of the use and benefit of their money or property; rather, the defendant claims, he "just had not gotten around to performing the contract." *Id.*

¶ 35 "Where the defendant's actions between the time of the contract and the arrest manifest an intention to perform the contract, a conviction for theft by deception should not stand." *Id.* However, the defendant's claim that "he had not gotten around to performing the contract will not negate the intent to permanently deprive." *Id.* at 736-37.

¶ 36 In *Riner*, we looked to the Fifth District's decision in *People v. Wheadon*, 190 Ill. App. 3d 735 (1989), and the Second District's decision in *People v. McManus*, 197 Ill. App. 3d 1085 (1990), to ultimately find that "a token pretense at performing the contract is insufficient to overturn a jury's finding the defendant intended to permanently deprive the owner of the use and benefit of the money." *Riner*, 234 Ill. App. 3d at 737.

¶ 37 In *Wheadon*, the defendant's conviction for theft over $300 by deception was affirmed when the court found (1) the defendant had converted the money he had been given to his own use, (2) he misrepresented himself as the president of a defunct corporation, and (3) he made only a token pretense of fulfilling the contract. *Wheadon*, 190 Ill. App. 3d at 738, 740.

¶ 38 Likewise, in *McManus*, the defendant's conviction for theft by deception was affirmed when the defendant did not follow through with his promises although he took some steps toward completion. The court rejected the defendant's claim that he did not intend to permanently deprive the owners of the use and benefit of their money when the defendant could not have been reasonably expected to succeed in his proposed promise since he did not own the land he was proposing to sell. *McManus*, 197 Ill. App. 3d at 1098.

¶ 39 We find a similar situation in this case. Although defendant was a licensed taxidermist beginning in 2008, and although defendant initially indicated he would perform the

work requested, there came a time when he accepted money and wildlife from customers knowing he would not satisfy his obligations. Indeed, customers willingly handed over their specimens and money to defendant. However, based on defendant's intent at the time he received the property, his control would be considered "unauthorized" since he had no intention of performing his end of the bargain. The State's evidence showed that defendant continued to receive wildlife from customers *after* his taxidermy license had expired and *after* he knew he was unable or unwilling to perform the expected taxidermy work on the specimens. Defendant's intent to permanently deprive the individuals of their property is supported by Graden's testimony that defendant "had virtually no records in his possession at all." Had defendant intended to perform the work he was asked to perform, he would likely have, as all taxidermists are required to do, made, kept, and maintained records of his transactions and specimens received. How else would he have been able to know who delivered what specimens to him and for what particular service? The State demonstrated defendant completely failed to maintain records thereby implying he had no intent to perform taxidermy services but every intent to permanently deprive the owners of their property despite his position that he was just five to six years behind on his work.

¶ 40 It is within the province of the trier of fact to weigh the evidence and judge the credibility of the witnesses. See *People v. Collins*, 106 Ill. 2d 237, 261-62 (1985). The reviewing court will not substitute our judgment for that of the trier of fact on issues of witness credibility unless the evidence itself is so implausible, improbable, or unsatisfactory as to raise a reasonable doubt of the defendant's guilt. *People v. Slim*, 127 Ill. 2d 302, 307 (1989).

¶ 41 Here, the State presented sufficient evidence for a rational trier of fact to conclude defendant intended to permanently deprive his customers of the use and benefit of their property. He accepted money and wildlife from several individuals yet failed to either return the money and

property or perform the service requested of him. "Simply put, he made assorted promises and failed to keep them." *Riner*, 234 Ill. App. 3d at 740. In light of defendant's conduct of failing to perform the services, maintain sufficient records, refund the money, or return the wildlife specimens, a rational trier of fact could have determined defendant intended to permanently deprive the customers of the use and benefit of their property by accepting money and specimens. The trial court specifically found it did not believe defendant's testimony regarding his intent. Rather, the court apparently believed defendant did not intend to perform the services *or* refund the customers' money. We affirm the trial court's conclusion.

¶ 42    Because we find the State sufficiently proved defendant guilty beyond a reasonable doubt of all ten counts, we reject defendant's claim that, had his counsel moved for a directed finding after the State's presentation of evidence, the result of the trial would have been different.

¶ 43                                      B. Statute of Limitations

¶ 44    Defendant next contends his counsel was ineffective for failing to file a motion to dismiss count IX (which was actually count X, as the counts in the information were misnumbered) as time barred. Defendant claims the count alleging misdemeanor theft as to Sam Fitzpatrick's property, a drake pintail duck and $140 cash, was incurably brought beyond the applicable 18-month statute of limitations period (see 720 ILCS 5/3-5(b) (West 2016)) and, because counsel failed to raise the issue, he rendered ineffective assistance of counsel.

¶ 45    In count X of the August 4, 2017, information, the State alleged defendant "[o]n or about December 2014" "committed the offense of [t]heft (Class A [m]isdemeanor), in that said defendant exerted unauthorized control over property of Sam Fitzpatrick, being a [p]intail [d]rake duck, and a cash deposit, having a total value not exceeding $500[ ] intending to deprive Sam Fitzpatrick permanently of the use or benefit of the property, in violation of 720 ILCS 5/16-1(a)1

- 11 -

[(West 2016)]." Defendant claims the August 4, 2017, information barred offenses committed before February 4, 2016, or 18 months earlier, unless they were included in an earlier September 2016 information filed against defendant, which was dismissed upon the filing of the current information (see Livingston County case No. 16-CM-315). The allegation against Fitzpatrick was not included in the 2016 information and thus, defendant argues, was new and time barred.

¶ 46 The State contends the December 2014 date alleged in the information was a date uncertain. December 2014 was the date Fitzpatrick tendered the duck to defendant for services. Had defendant filed a motion to dismiss this count on statute-of-limitations grounds, according to the State, it could have amended the count to remove any reference of time entirely or provided a time within the statute of limitations. We disagree.

¶ 47 Here, in count X, which was identified as count IX in the August 2017 information, the State alleged defendant committed theft of Fitzpatrick's duck upon tender in December 2014. This was a new charge with a new victim from what was alleged in the original September 2016 information. The statute of limitations on defendant's theft of Fitzpatrick's duck ran sometime in June 2016. Thus, the State was required to bring a charge for this particular offense against defendant before that time. It failed to do so.

¶ 48 As alleged, the theft at issue occurred once, in December 2014, and was not a continuing offense. See *People v. Steinmann*, 57 Ill. App. 3d 887, 894 (1978). The charge was not brought against defendant until August 4, 2017, well beyond the applicable 18-month limitations period. Thus, we find count X, alleging theft of Fitzpatrick's duck in December 2014, should be vacated. This claim avoids typical procedural forfeiture for not being raised in the trial court due to counsel's failure to raise the issue. That is, we find that, had counsel filed a motion to dismiss count X (enumerated as count IX in the information) as time barred, the trial court would have

- 12 -

granted the motion and dismissed the count. We now take that action; we vacate defendant's conviction on count X.

¶ 49                    III. CONCLUSION

¶ 50        For the foregoing reasons, we vacate defendant's conviction on count X (enumerated in the August 4, 2017, information as count IX) and otherwise affirm the trial court's judgment.

¶ 51        Affirmed in part and vacated in part.