2023 IL App (1st) 192378-U

FIRST DISTRICT,
FIRST DIVISION
May 30, 2023

No. 1-19-2378

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 17 CR 5960 |
| | ) | |
| JOSEPH T. PIERCE, | ) | Honorable |
| | ) | Steven Jay Rosenblum, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE COGHLAN delivered the judgment of the court.
Presiding Justice Lavin and Justice Pucinski concurred in the judgment.

**ORDER**

¶ 1      *Held*: Defendant's convictions for aggravated domestic battery with strangulation and criminal damage to property are affirmed where defendant's counsel was not ineffective for failing to prevent the admission of an audio recording, the State did not knowingly rely on perjured testimony, and evidence of the property damage was sufficient.

¶ 2      Following a bench trial, defendant Joseph T. Pierce was found guilty of aggravated domestic battery and criminal damage to property and sentenced to concurrent terms of 8 years' imprisonment for aggravated domestic battery and 2 years for criminal damage to property. On appeal, defendant argues that: (1) his trial counsel was ineffective for failing to prevent the

admission of the victim's audio recording of defendant, (2) the State knowingly relied upon the victim's perjured testimony, and (3) the State failed to prove the value of the damaged property. For the following reasons, we affirm.

¶ 3                                    BACKGROUND

¶ 4        Defendant was charged with aggravated domestic battery, domestic battery, and criminal damage to property stemming from an incident with his ex-girlfriend, Shonita Pate[1], during which defendant beat and choked Shonita and broke her cellphone.

¶ 5                                  Pre-Trial Motions

¶ 6        Prior to trial, the court granted the State's motion to admit proof of other crimes pursuant to 725 ILCS 5/115-7.4. It found evidence defendant pushed, struck, and choked Shonita after an argument on August 20, 2016, was admissible to show propensity to commit domestic violence. The court made a finding of factual similarity, explaining that the "proximity in time" between the two offenses was "not very long" and the crimes involved the "same victim, same relationship, same striking by the Defendant."

¶ 7        The State also moved *in limine* to admit an audio recording of the March 26, 2017, incident that was captured on Shonita's cell phone. The State argued that the recording did not violate the eavesdropping statute (720 ILCS 5/14-1, *et seq.*), because "the captured audio was neither recorded surreptitiously, nor was it private conversation." Alternatively, the State argued that the "fear-of-crime" exception to the statute applied because Shonita "reasonably believed that defendant may commit a criminal offense against her *** based upon a prior domestic battery that occurred on August 20, 2016." The court ruled that the recording would be admitted if the State was able to

_____

[1] Because Shonita Pate and Ernest Pate have the same last names, we use their first names.

lay a proper foundation at trial.

¶ 8                                             Bench Trial

¶ 9          Shonita testified that she began dating defendant in 2016. Sometime "between August and September" of 2016, defendant became "physical" with Shonita and choked her when she tried to break up with him. Shonita called the police, but they later got back together.

¶ 10          On March 25, 2017, Shonita and defendant had been broken up for approximately two weeks. That day, Shonita's sister went with her to defendant's workplace to retrieve the key to a rented Toyota Rav4. A "couple weeks" earlier, Shonita had allowed defendant to use her primary car, but he took the rental car instead. Shonita made numerous unsuccessful attempts to get the Toyota back from defendant. Defendant refused to return the key when Shonita arrived at his workplace, "started to get loud," and threatened to "throw [the] key into the lake." He told Shonita he would return the key after work, and she left. When defendant failed to do so, Shonita left him a voicemail message that she "would be over the next day to get [her] key from his mother['s] house."

¶ 11          On March 26, 2017, Shonita and her uncle, Ernest Pate, went to defendant's mother's apartment in Alsip, where defendant was living at the time. Shonita called defendant in advance and told him she was coming to get the car. When they arrived, Shonita went into the apartment building while Ernest waited in the car. Shonita had two cell phones with her: an iPhone for work and an Android for personal use. The Android was in the thigh pocket of her scrubs, and she was holding the iPhone in her hand.

¶ 12          Someone "buzzed" Shonita into the building and she began walking up to the second floor apartment. She activated the audio recorder on her Android phone in her pocket because "something about the vibe *** made [her] press record." Shonita knocked on the front door and

defendant's mother answered. She asked for the car key and defendant's mother relayed the information to defendant. After "a lot of time" passed, Shonita turned to leave because she had a "weird feeling *** that something wasn't right."

¶ 13 As Shonita was walking down the stairs, defendant came out of the apartment and hit her in the back of the head "two to three times." Shonita "just couldn't believe" defendant was hitting her. When defendant's mother came out and told him to "stop hitting" her, Shonita asked her to call the police. Defendant began choking Shonita with his hand. She "maneuvered out of it" and moved towards the front door of the building. Shonita saw Ernest through the glass door as defendant hit her again. Defendant punched Shonita in the eye, left jaw, and right side of her head, and slapped her with his open hand.

¶ 14 While Shonita was trying to call 911 on her iPhone, defendant grabbed the phone, threw it to the ground, and stepped on it. The phone, which Shonita estimated was worth "[a]pproximately [$]500, $600," shattered, and defendant stepped on it again. Defendant then "pinned" Shonita into the corner near the door and choked her with his hand. Shonita could not breathe or talk while being choked. After defendant's mother let Ernest into the building, defendant punched him in the head. Ernest managed to pull Shonita out the door and defendant ran back up to the apartment.

¶ 15 Shonita called 911 with a third cell phone that she kept in the car for emergencies. The police arrived and arrested defendant. As defendant was being led out of the apartment, he yelled at Shonita that she was "a stupid b***" and threatened to "come back to get" her. At the police station, Shonita gave the officers the recording from her Android cell phone. The recording was copied to a disc and admitted into evidence at trial.

¶ 16 The recording starts with a conversation between Shonita and defendant's mother about the car key. Shonita tells her, "I don't really have to wait on him. Just please just get my key,

please. I do not wanna talk to him at all." About two minutes later, defendant asks Shonita, "Where my stuff at?" After a brief exchange, Shonita says, "Ok, you are not going to get my key. I'm going to get it one way or another."

¶ 17    A commotion begins and Shonita exclaims, "What is wrong with you? Why would you hit me?" Defendant's mother says, "Joseph, what is wrong with you?" "Come on, Joseph," "Stop! Stop!" After a slapping noise, defendant's mother says, "No. Joseph, I live here. *** Don't do that. Leave her alone. *** I gotta have a place to stay. Don't do it. *** Leave her alone." After more commotion, Shonita says, "I can't believe that he just put his hands on me," and screams, "Will you call the police? Give me my key!" Defendant's mother continues telling him to stop. Defendant yells, "Hold still. I'm about to beat the hell out of you." After a loud thud, Shonita says, "You just ruined my phone. This phone costs seven hundred dollars."

¶ 18    Defendant tells his mother to "watch out" as she continues to plead with him to stop. Shonita screams and cries, pleading, "Let me go. Stop. Stop. Don't put your hands on me." Defendant calls Shonita a "b***" while she continues begging him to stop. The commotion continues until Ernest says, "I'm a police," and Shonita presumably exits the building. The recording also captured Shonita calling 911 and telling police "Joseph *** Pierce just punched me in my left eye *** choked me, and said he was going to kill me." After being arrested, defendant yells obscenities and threats at Shonita.

¶ 19    Ernest testified that he accompanied Shonita to pick up a vehicle in Alsip and waited in the car while she went into the apartment building. After four or five minutes, he got out of the car because Shonita had not returned. As he approached the building, Ernest could see that defendant was pushing Shonita and had his hands around her neck. He heard loud noises and defendant's mother yelling "stop *** why are you doing this, Joseph?" While defendant's mother was trying

to get between Shonita and defendant, Shonita reached for the door handle. Ernest yelled "Police officer" to "diffuse the situation." Ernest reached in the door and tried to pull Shonita out of the building. Defendant punched Ernest in the back of the head as Shonita ran outside. Ernest later observed a red mark on Shonita's neck. Ernest acknowledged he had previously been convicted of armed robbery in 1998.

¶ 20     Defendant testified that he and Shonita began dating in June 2016. On March 25, 2017, Shonita showed up at his job while he was working, accused him of cheating on her, and asked for the rental car back. Defendant denied threatening to throw the key in the lake, claiming that Shonita agreed to let him use the car for the rest of the day.

¶ 21     Shonita arrived at his mother's apartment the next day and defendant let her into the building. When defendant heard Shonita asking his mother for the car key, he came out of the apartment. Shonita accused him of cheating and hit him with her phone. As defendant's mother tried to intervene, Shonita asked him, "[W]hy you hitting me?" Defendant denied hitting Shonita or putting his hands around her neck. Defendant acknowledged he had been convicted of armed robbery in 2011.

¶ 22     On cross-examination, defendant claimed that Shonita's phone fell to the ground while she was hitting him and he "made a mistake and stepped on it." He claimed that Ernest never entered the building and he only saw him through the open door. Defendant admitted that when police took him from the building, he swore at Shonita and told her that was "going to get her."

¶ 23     The trial court found defendant guilty of aggravated domestic battery with strangulation and criminal damage to property. The court noted that photographs showed Shonita "had a bruise on her face *** redness on her neck area," and "the audiotape spoke volumes in this case." The court found that the evidence, including the testimony of Shonita and Ernest, "lead to only one

conclusion." Defendant was sentenced to concurrent terms of 8 years' imprisonment for aggravated domestic battery and 2 years for criminal damage to property.

¶ 24                                ANALYSIS

¶ 25                       Ineffective Assistance of Counsel

¶ 26        Defendant first argues that his trial counsel was ineffective for failing to adequately challenge the admission of Shonita's audio recording under the eavesdropping statute (720 ILCS 5/14-1 *et seq.* (West 2018)). Specifically, defendant asserts that his counsel erred in failing to challenge the State's reliance on the "fear-of-crime" exemption contained in section 14-3(i) of the statute. 720 ILCS 5/14-3(i) (West 2018).

¶ 27        To establish ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), a defendant must generally prove that (i) counsel's performance was objectively unreasonable and (ii) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *People v. Patterson*, 2014 IL 115102, ¶ 81 (citing *Strickland*, 466 U.S. at 692). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

¶ 28        The eavesdropping statute prohibits the surreptitious recording of a private conversation without consent of all parties involved. 720 ILCS 5/14-2(a)(2). "Private conversation" means any "oral communication between two or more persons, when one or more parties intended the communication to be of a private nature under circumstances reasonably justifying that expectation." 720 ILCS 5/14-1(d).

¶ 29        The State maintains that the recording did not violate the eavesdropping statute because, although the altercation was surreptitiously recorded, defendant did not have a reasonable expectation of privacy under the circumstances. Defendant argues that the statute "does not ***

expressly allow the recording of loud private arguments coming from enclosed private residential property."

¶ 30    In *People v. Clark*, 2014 IL 115776, our supreme court recognized that "[i]ndividuals have a valid interest in the privacy of their communications and a legitimate expectation that their private conversations will not be recorded by *those not privy to the conversation*." (Emphasis added.) *Id.* ¶ 21. The court declared the former eavesdropping statute unconstitutional because it "criminalize[d] a whole range of conduct involving the audio recording of conversations that cannot be deemed in any way private." *Id.* As examples, the court listed: "(1) a loud argument on the street; (2) a political debate in a park; (3) the public interactions of police officers with citizens (if done by a member of the general public); and (4) any other conversation loud enough to be overheard by others *whether in a private or public setting*." (Emphasis added) *Id.* Following the court's decision in *Clark*, the Illinois legislature added the "private conversation" requirement to the eavesdropping statute in late 2014. 720 ILCS 5/14-1(d) (eff. Dec. 30, 2014). A party's expectation of privacy must be reasonable under the circumstances. *Id.*

¶ 31    In this case, there is no evidence that defendant intended his communications to be "of a private nature," or if he did, that such expectation was reasonable under the circumstances. 720 ILCS 5/14-1(d). The communications at issue occurred during an altercation in the entryway of the apartment building, in the presence of defendant's mother and were loud enough to be heard by Ernest outside the building.

¶ 32    We find that Shonita's recording did not violate the eavesdropping statute. Accordingly, defendant's claim that counsel failed to adequately challenge the admission of this evidence is without merit.

¶ 33                           Shonita's Testimony

¶ 34        Defendant also argues that the recording "proves that the State knowingly relied upon a false claim and perjured testimony" that defendant had previously attacked Shonita, Defendant relies on Shonita's statements on the audio recording that: "I have never in all my life had nobody put their hands on me! I'm like really upset and if I had known that he would have done all this, then I would have called the police"; "I can't believe that he just put his hands on me!"; and "I cannot believe your son just put his hands on me like that for no reason."

¶ 35        Although conceding forfeiture of this claim for failing to raise it at trial and in a post-trial motion, defendant seeks review under principles of plain error. The plain error doctrine permits review of a forfeited claim when a clear or obvious error occurred and either (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error," or (2) the "error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatowski*, 225 Ill. 2d 551, 565 (2007). The first step in a plain error analysis requires the defendant to establish that a clear or obvious error occurred. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010).

¶ 36        "A conviction obtained using false testimony implicates due process concerns and is subject to reversal." *People v. Lucas*, 203 Ill. 2d 410, 422 (2002). A person commits perjury when, "under oath or affirmation *** he makes a false statement, material to the issue or point in question, which he does not believe to be true." *People v. Redmond*, 265 Ill. App. 3d 292, 309 (1994). The defendant must show by clear, convincing, and satisfactory evidence that the testimony was false and was willfully and purposefully given. *Id.* "Mere inconsistencies in testimony do not establish perjury or that the State knowingly used perjured evidence." *People v. Trimble*, 220 Ill. App. 3d

338, 346 (1991) Here, any inconsistencies between Shonita's testimony and the audio recording "fall short of establishing a knowing use of perjury." *Id.*

¶ 37    Shonita's recorded statements occurred during a sudden physical altercation in which defendant punched her in the head and face, broke her phone, pinned her in a corner, and choked her. Shonita's excited exclamations do not constitute "clear, convincing, and satisfactory evidence" that she committed perjury. *Trimble*, 220 Ill. App. 3d at 346.

¶ 38    Defendant has failed to demonstrate that the testimony in question was willfully and purposely falsely given or that the State knowingly presented perjured testimony.

¶ 39                              Criminal Damage to Property

¶ 40    Defendant argues that the State failed to prove him guilty of felony criminal damage to property because there was "no evidence regarding the cost to repair the iPhone." In reviewing the sufficiency of the evidence, "the question is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original) *People v. McLaurin*, 2020 IL 124563, ¶ 22 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This court will not retry the defendant or substitute its judgment for that of the trier of fact on the weight of the evidence or credibility of witnesses. *People v. Brown*, 2013 IL 114196, ¶ 48. "We will not reverse a conviction unless the evidence is so improbable, unsatisfactory, or inconclusive that it creates a reasonable doubt of defendant's guilt." *People v. Collins*, 214 Ill. 2d 206, 217 (2005).

¶ 41    To prove the elements of felony criminal damage to property, the State was required to establish that defendant knowingly damaged Shonita's cell phone, "and the damage to said

property exceeded $500[2] but did not exceed $10,000." 720 ILCS 5/21-1(a)(1); (d)(1)(F). Where, as here, "the charge of criminal damage to property exceeding a specific value is brought, the extent of the damage is an element of the offense to be resolved by the trier of fact as either exceeding or not exceeding the specified value." 720 ILCS 5/21-1(b).

¶ 42    While the State does not need to prove the exact amount of damages, it must prove the minimum amount of damage necessary to justify a felony conviction. *People v. Carraro*, 77 Ill. 2d 75, 79-80 (1979). The criminal damage to property statute does not establish the nature of proof the State is required to adduce to establish damage in excess of $500. *Id.* at 79. We have noted that "the statute related to theft parallels the statute defining criminal damage to property" where, as here, "the amount of damage determines whether the offense shall be punished as a felony or misdemeanor." *People v. Davis*, 132 Ill. App. 3d 199, 202 (1985). Consequently, we have held that "[t]he value of stolen property is the fair market value at the time and place of the theft." *People v. Moore*, 2021 IL App (1st) 172811, ¶ 214. In such instances, "[t]he opinion testimony of one who has sufficient knowledge of the property and its value to give a reasonable estimate, received without objection, is sufficient, in the absence of contrary evidence, to establish value." *People v. Harden*, 42 Ill. 2d 301, 305-06 (1969).

¶ 43    In *People v. Roby*, 202 Ill. App. 3d 143 (1990), the victim testified in a criminal damage to property trial that the steering column of his luxury model car was "completely ripped out," the electric door locks and windows were damaged, and the estimate for repairs was "in excess of $200." *Id.* at 144. We found this testimony was sufficient to support the finding that the value of

---

[2] The charge alleged that "the damage to said property exceeded $300 but did not exceed $10,000." Section 21-1(d)(1)(F) was amended effective January 1, 2017, to increase the minimum amount to $500. 720 ILCS 5/21-1(d)(1)(F) (amended by Pub. Act 99-631 (eff. Jan. 1, 2017)). Defendant does not argue that this violated his right to be informed of the criminal accusations made against him.

the damage exceeded $300 and affirmed defendant's criminal damage to property conviction. *Id*. at 146. In *People v. Burks*, 304 Ill. App. 3d 861 (1999) we distinguished a case in which the defendant stole 120 T-shirts without evidence of "the quality or value of the T-shirts," from cases such as *Roby*, where there was "some evidence of the value of the property which was at issue." *Id.* at 863.

¶ 44     In the instant case, we find that Shonita's uncontested testimony that the phone "costs seven hundred dollars" and was worth "[a]pproximately [$]500, $600" sufficiently established the value of the phone. Defendant did not object to Shonita's estimate based on her experience as the owner of the phone and did not offer any "contrary evidence" of the phone's value. *Harden*, 42 Ill. 2d at 306. Viewed in the light most favorable to the State, the evidence was sufficient to show that defendant caused damage to the phone that exceeded $500 and support defendant's conviction for criminal damage to property.

¶ 45                                    CONCLUSION

¶ 46     For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 47     Affirmed.